## JOHN CLARK *vs.* LAWRENCE P. SOULE.
## DANIEL WHITE *vs.* SAME.

Middlesex.    March 19. — June 26, 1884.    DEVENS & COLBURN, JJ., absent.

In an action by a workman against his employer, for personal injuries caused by the fall of a staging upon which he was at work, it was in dispute whether the defendant undertook to furnish the staging as a completed whole, or whether he undertook merely to provide, and did provide, a quantity of staging materials from which fellow servants of the workman erected the staging. The judge instructed the jury that a master is liable to his servant for injuries resulting from defective materials negligently furnished by him, although the negligence of a fellow servant contributes to the accident; and, on the question whether the obligation of the master extended to the furnishing of the staging as a completed structure, read the instructions requested by each party, and instructed the jury, that, if the plaintiff's theory was correct, the instructions he asked for were law; and that, if the defendant's theory was correct, the instructions he asked for were law. *Held*, that the plaintiff had no ground of exception.

TWO ACTIONS OF TORT, for personal injuries caused by the fall of a staging, upon which the plaintiffs were at work in the employ of the defendant. The cases were tried together in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiffs introduced evidence tending to show that the defendant, a contractor and builder, in December, 1882, was erecting, under contract, a brick building for the American Tube Works at Somerville; that he had a foreman of the job, one

William A. Pike; that the plaintiffs were hod-carriers in the defendant's employ; that on the morning of December 7, 1882, the plaintiffs, with other fellow workmen, were ordered by Pike to carry bricks upon a staging in front of the building; that while the plaintiffs were on the staging it fell, and they were thereby injured.

The staging consisted of certain posts, called uprights, running perpendicularly from the ground, seven or eight feet apart, and four or five feet from the wall of the building; a board, called a ledger-board, was fastened to and connected these uprights at a height of from fifteen to twenty feet from the ground; running from the ledger-board into the wall were certain pieces of joist, in size three inches by four, called putlogs, and from four to eight feet apart, upon which the planks of the staging rested. The evidence was conflicting as to the number of putlogs and their distance apart.

It was agreed that the staging fell because of the breaking of one of these putlogs , the cause of its breaking was disputed.

The plaintiffs contended that it broke because it was defective, and that, because of its defective construction, the defendant was liable; and they introduced evidence tending to show that at the time of its breaking there was upon it a weight much less than it could and ought to bear if sound; that they were doing their work in a proper and careful manner, and were using the staging in a proper, usual, and careful way; and that, after the accident, the broken putlog was examined and found to have nails and nail-holes in the break, and to be old, rotten, and defective.

They further introduced evidence tending to show that the materials of which the staging was made, including the broken putlog, were owned and furnished for its construction by the defendant; that they were so furnished cut in a certain size and shape, and all ready to be made into a staging; that this required only a joining together into a structure of these various prepared parts, known as uprights, ledger-board, putlogs, and planks; that these parts, including the broken putlog, had been made up and used as a staging at various places and times before, covering a period of nearly two years; that they were sent by the defendant from Watertown, where they had been used two or three

months, to this building at Somerville, and were there put in a pile near the building to be used for the construction of the staging for the building; that all the material in the pile was old, and seemed to be of the same quality and condition; that after the accident the material that was left in the pile was examined, and found to contain other defective putlogs, which broke upon being tested.

The plaintiffs further introduced evidence tending to show that, on the morning of the accident, the staging which fell was erected by the foreman Pike and two workmen, Riley and Devoe, under the superintendence of Pike; and introduced the answers of the defendant to written interrogatories, in which answers he said, after stating that he was erecting this building under contract: "My relations to the building itself were precisely the same as to other buildings and other work upon which I was engaged at the time. It was impossible for me to give my personal supervision to each job on hand, and upon each one I had a foreman or superintendent. Pike was the foreman upon the American Tube Works job. He superintended and gave his constant personal attention to the whole matter, and I furnished the men and materials necessary. I visited the building as it progressed, substantially every day, to find out how the work was getting on, and to be able to have the different materials on hand when required. I visited in the same way all the different jobs on my hands every day. As this job was situated so that I passed by there on my way to the city and to my other work, I always stopped there the first thing in the morning. I exercised no personal supervision of the work, but left it entirely with Pike, and was not often detained at the building more than fifteen or twenty minutes each morning." After stating that he was present at the building on the morning of the accident, but before the staging fell, and that he " did not make any examination that morning of the staging that afterwards fell," he further answered: " At previous visits, before the staging which fell had been raised to the place from which it fell, I had been upon it when examining the brickwork. It was a thoroughly built staging, made in the best manner, as I thought. I did not superintend its construction. It was built under the direction of Pike by the masons, and it looked like a substantial and proper staging." He added,

that he owned and furnished the materials that were used in its construction.

The plaintiffs further introduced evidence tending to show that Devoe was ordered to go to the pile and get some putlogs for building this staging; that he went to the pile, picked some out at random, without making any particular selection or examination; and that these were used in the staging, and included the one that afterwards broke.

The defendant contended that the putlog in question was sound and good, and that it broke because the plaintiffs and their fellow workmen improperly crowded on it, and improperly and negligently dumped their bricks upon it; and he introduced evidence tending to show that the lumber from which it and the rest of the staging materials were made was originally carefully selected; that the materials had received proper usage, and were in a safe and sound condition when brought to Somerville and there used; that the putlog itself was examined after it broke, and was found to be of sound, good material, and in a sound condition; that it would bear a weight of from one and a half to two tons, but would be liable to be broken by throwing down hods of brick upon it; that the plaintiffs and their fellow workmen crowded together over it, and improperly threw their bricks down upon it, though they had previously been cautioned not to do so; that the materials furnished by the defendant in the pile were sound and good. The defendant further introduced evidence tending to show that fellow workmen of the plaintiffs built the staging, with Pike helping and directing.

It was not contended that the defendant had employed incompetent men, or that the staging, in its form and structure, was improper or defective, except in having in it defective and improper materials.

The plaintiffs contended that it was the duty of the defendant to use ordinary care to furnish a safe and proper staging as a completed whole; that whether the duty of furnishing the staging as a completed whole was on the defendant, or was assumed by fellow workmen of the plaintiffs, it was the duty of the defendant to use proper care that the materials he furnished for the construction of the staging were safe and sound; and that if he furnished putlogs and other parts ready for use, some sound

and some defective, all of which might be used and were sent for use, and if he failed to take proper steps to prevent the use of the defective materials, and they were used, and caused the plaintiffs' injuries, then he was liable, though fellow workmen of the plaintiffs took from the pile the defective material, when there was sound material which it was possible for them to have selected.

The plaintiffs asked the judge to instruct the jury as follows: " 1. If the defendant negligently furnished unsafe and improper materials to be used in the construction of the staging, and their use occasioned the injuries to the plaintiffs, the defendant is liable, although there may have been negligence of fellow servants of the plaintiffs in using such material. 2. If the defendant furnished materials for the construction of the staging, some of which was improper and unsafe, and fellow workmen of the plaintiffs, under the superintendence of the defendant or his agent, selected such unsafe and improper materials, and their use occasioned the plaintiffs' injuries, the defendant is liable in negligently furnishing such materials, although he furnished other materials which were safe and proper, and which might have been used. 3. If the staging was erected under the superintendence of the defendant or his agent, and fell because of a defective putlog, negligently furnished by the defendant, he is liable, although he furnished other sound putlogs which might have been used. 4. If the defendant employed Pike as foreman of the job, and, as such foreman, he superintended the construction of this staging, the defendant, having furnished the material to be used, is liable for the negligence of such foreman in using unsafe and improper materials so furnished, although the defendant was not personally present and did not personally superintend the work. 5. If the defendant negligently furnished defective materials to be used in the construction of this staging, and their use occasioned the injuries to the plaintiffs, the defendant is liable, although fellow workmen of the plaintiffs were negligent in the construction of said staging, and their negligence also contributed to the injuries. 6. A master is liable to his servant for injuries resulting from defective materials negligently furnished by him, although the negligence of a fellow servant contributes to the accident. 7. If the defendant

furnished the parts of this staging, all cut and in shape to be made up into a staging, and among these parts so provided were, by the defendant's negligence, some that were unfit and unsafe to be so used, but which might be used and were used, and occasioned the plaintiffs' injuries, the defendant is liable if he failed to take proper steps to prevent the use of such defective parts."

The defendant contended that he did not undertake to furnish the staging as a completed structure; that if he furnished a large pile of staging materials, which contained suitable putlogs, and a fellow servant of the plaintiffs, not under the superintendence of the defendant, took at random from the pile the defective putlog, the plaintiffs could not recover.

The defendant asked the judge to instruct the jury as follows: "1. If the jury find that the putlog was defective, and that this defect alone caused the accident, and further find that this particular putlog was selected at random from a large pile of staging material, which contained other suitable putlogs, by Devoe, a fellow workman of the plaintiffs, and that, at the time, Devoe was not under the superintendence of the defendant, but selected the putlog at the request of another fellow workman 'to go and get a putlog,' then the plaintiffs cannot recover. 2. If the defendant used ordinary care in purchasing and supplying material for staging, used ordinary care in storing it when not in use, and reasonable precautions in protecting it from the weather, by properly stacking it in a proper place, and covering it with a roof, and employed competent men to take charge of the erection of the staging, with instructions to call for new materials when required, then, in the absence of evidence that he failed to comply with all requests for new material, he is not liable for an accident to the plaintiffs caused by the breaking of a defective putlog, which was selected at random from a pile containing suitable putlogs by one fellow servant of the plaintiffs and put by another fellow servant into the staging that afterwards fell, the selection of the putlog being made (not under the superintendence of the defendant) at the request of the fellow servant to 'get another putlog from the pile.'"

The judge gave the sixth request for instructions asked for by the plaintiffs, but refused to give the other instructions asked

for by them, except so far as they may be contained in the following instructions given, and treated the instructions asked for by the defendant as hereinafter stated.

Upon the points embraced in these requests, the judge instructed the jury as follows: " The master is bound to exercise proper care in supplying suitable appliances, instrumentalities, or materials for the performance of the work required, where that duty devolves upon him, and the defendant is liable for injuries occasioned by a neglect to fulfil this master's duty, whether it arises from his own want of care, or that of his agent to whom he entrusts the duty. Although that agent may be a workman, he is not considered as a fellow workman with the plaintiffs while he is discharging the master's obligation, but his neglect while acting in such capacity is, in law, the master's neglect.

" In the present case, the parties agree as to the duty of the defendant to use due care in regard to the materials furnished for the construction of this staging. It is the general duty of the master to provide the appliances with which work is to be performed; and this involves due care in the selection, furnishing, and application of suitable materials for, as well as the proper construction of, such appliances. It is not, however, true, as a universal proposition, that every appliance, mechanical contrivance, or structure that may be used by workmen in the prosecution of their business, is necessarily one for the construction of which the employer is liable. For example, it has been decided, in the case of a suit by a laborer against his employer for injuries occasioned by want of proper protection of the banks of a sewer, that the work required for the protection of the men the frequent use of temporary structures, the location and erection of which, as the digging progressed, were a part of the work in which the superintendent and the men under him were alike employed, and for the preparation of which, as in the case of the scaffold of the mason or the carpenter, the master is not liable, unless there is something to show that he assumed it as a duty independent of the servant's employment; and that the mere occasional presence of the defendant as the work went on was not enough to charge him with this duty.

" Whether a particular structure or appliance is one for which the master is responsible to his servant, may depend on circumstances, including the nature and scope of the employment of those engaged in its preparation and use. It may depend on the question whether the direction and charge of the work is confided to the workmen, or some of them, or retained by the employer, or left unprovided for. If the employer directs his workmen to do certain work, leaving it to them to provide the structures and appliances required for its prosecution, he may be responsible only for care in the selection of the men and material assigned for it; but if he simply employs them to work under his directions, giving them no charge or responsibility in regard to the result to be accomplished or the appliances to be used, that responsibility remains with him. The negligence of fellow workmen for which the master is held to be exempt from responsibility is negligence in respect to that which the workmen undertook or were set to do. When the preparation of the appliances is neither entrusted to nor assumed by them, the master may be held guilty of negligence, if defective appliances are provided, even though the workmen themselves are employed in the preparation of them. In such case, if negligence is proved, it is a question of fact for the jury whether that negligence was in respect of what was done or undertaken by the fellow workmen or was the negligence of the master. Applying this rule to the present case, if the building of this staging was the duty of Pike and his assistants as a part of their work as servants and workmen, then any negligence in the choice of materials would be the negligence of a fellow workman, and would not support an action of the plaintiffs; but if they were in the discharge of the master's duty to the workmen, then their negligence was his negligence, and creates a liability to the plaintiffs on the part of the defendant.

" The remaining point of contention on this branch of the case is whether the obligation of the master extended further, to the furnishing of this staging as a completed structure, involving the question whether he is liable for its construction. The plaintiffs contend that, in the selection and placing of the alleged defective putlog, the foreman Pike and those acting under him were but in the discharge of their master's duty,

while the defendant contends that they were simply performing their duty as fellow workmen of the plaintiffs. Upon the plaintiffs' theory he asks for certain instructions." The judge then read to the jury the plaintiffs' second, third, and fourth requests for instructions, and added, "the defendant asks for certain instructions," and read these to the jury. The judge then instructed the jury as follows: "If the plaintiffs' theory is correct, then the instructions he asks for are law; if the defendant's theory is correct, then the instructions he asks for are law."

The jury returned a verdict for the defendant; and the plaintiffs alleged exceptions.

*W. E. Russell*, for the plaintiffs.

*G. L. Huntress*, for the defendant.

W. ALLEN, J. The instructions were full and accurate, and well adapted to the evidence, and include all that was asked by the plaintiffs in their first, fifth, sixth, and seventh requests for instructions. The sixth includes the other three, and was given in words, and the substance of all was elsewhere contained in the instructions given.

The instructions asked by the defendant, so far as they relate to the negligence of the defendant in furnishing materials, were at variance with the full instructions given; so far as they relate to the liability of the defendant for the negligence of fellow servants with the plaintiffs, they were consistent with the other parts of the charge, and are correct. As given by the court, we think that they are limited to the latter subject.

After the question of the liability of the defendant in furnishing materials had been fully considered in the charge, the other question of his liability for the negligence of his servants in selecting and using the materials in the construction of the staging — whether they were fellow servants with the plaintiffs — was submitted to the jury with full instructions respecting it; and in that connection the instructions asked by both parties based upon their respective contentions as to the duty of the defendant to furnish a completed staging, and involving the question whether those employed in constructing it were fellow servants with the plaintiffs, were considered and disposed of by saying that, if such were fellow servants, the defendant's requests were law, and, if they were not fellow servants, the plaintiffs' requests

were law; clearly meaning that they were law in regard to the liability of the defendant for the acts of such persons.

This part of the charge was obviously intended to apply only to the alternative that the defendant was not negligent in furnishing materials. The whole charge was to the effect that it was the duty of the defendant to furnish materials for the staging, and, if any negligence in furnishing them contributed to the plaintiffs' injury, the defendant was liable; that the liability of the defendant for the negligence of those engaged in the construction of the staging depended upon whether it was his duty to furnish the staging as a completed structure; if that was his duty, the plaintiffs' requests stated the law in regard to his liability in that respect; if that was not his duty, the defendant's requests gave the rule as to his liability for the acts of such persons. Taking the whole charge together, we think that the meaning is plain, and that it is a full and clear statement of the law of the case. *Exceptions overruled.*