## JAMES PRENDIBLE *vs.* CONNECTICUT RIVER MANUFACTURING COMPANY.

Hampden.    September 26, 1893. — November 28, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Employers' Liability Act — Master and Servant — Defective Appliance — Negligence — Evidence — Expert.*

A staging, fifteen feet high, twenty feet long, and five feet wide, erected in the yard of a sawmill by the side of a wood pile for the purpose of enabling the workmen to pile the wood higher, and which is taken down and put up from time to time in different places, and intended to be used from four days to a week at a time in each place where it is erected, is a part of the " ways, works, or machinery " of the mill, within St. 1887, c. 270, § 1, cl. 1.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the fall of a staging upon which he was at work, it appeared that the staging was erected in the yard of the defendant's sawmill by the side of a wood pile, for the purpose of enabling the workmen to pile the wood higher ; that it was about fifteen feet high, twenty feet long, and five feet wide, and was taken down and put up from time to time in different places, and was intended to be used from four days to a week at a time in each place where it was erected ; that it was held in place by three brackets or triangles, each of which was fastened to the wood pile by six wooden cleats, one end of each cleat being nailed to the wood pile and the other end to the upright part of the bracket ; that there were three nails at each end of each cleat, and the cleats were about a foot and a half or two feet long, about two inches wide, and about an inch thick ; that there was one prop or support under the outer edge of one end of the staging when it fell ; and that the staging was designed to hold a quantity of wood which was to be brought there in carts and thrown upon it from the ground, and also two men, who were expected to get upon it and throw the wood upon the pile. *Held*, that the question whether the staging was properly constructed in reference to the use for which it was intended was rightly submitted to the jury.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the fall of a staging upon which he was at work, it appeared that the staging was erected in the yard of the defendant's sawmill by the side of a wood pile for the purpose of enabling the workmen to pile the wood higher. There was evidence for the plaintiff that the staging was built by C., who was in the defendant's employ, assisted by a member of the piling gang ; that no one gave any orders to this gang except C. ; that he was the foreman of the gang ; that he sometimes worked with his hands, but worked when he pleased, and did whatever work he pleased ; that when he was working he was overseeing the men and giving them directions ; that he placed the men at work whenever he saw fit ; and that he hired workmen at different times, upon their application to him for work.  Two of the defendant's witnesses testified that C. had general authority over the gang of workmen.  *Held,* that the jury would be warranted in finding that C.'s principal duty was that of superintendence, within St. 1887, c. 270, § 1, cl. 2.

A staging about fifteen feet high, twenty feet long, and five feet wide, was erected in the yard of a sawmill by the side of a wood pile, for the purpose of enabling the workmen to pile the wood higher, and was taken down and put up from time to time in different places.  It was held in place by three brackets, each of which was fastened to the wood pile by six wooden cleats, one end of each cleat being nailed to the wood pile and the other end to the upright part of the bracket.  There were three nails at each end of each cleat, and the cleats were about a foot and a half or two feet long, about two inches wide, and about an inch thick.  The staging was designed to hold a quantity of wood which was to be brought there in carts and thrown upon it from the ground, and also two men, who were expected to get upon it and throw the wood upon the pile.  C., who built the staging and who had charge of the men in the yard, directed a whole load of wood to be put on it, although it had been the custom to put only half a load on at one time, and ordered two men to go upon the staging.  One of the men had just stepped upon the platform, the wood having been placed upon it, when the staging pulled away from the wood pile and fell, and the man was injured.  There was one prop or support under the outer edge of one end only of the staging when it fell.  *Held,* in an action for the injury, that there was evidence for the jury that C. was negligent.

A., who had been in this country about ten years, worked a year and a half in the yard of a mill, and about seven years in a dye-house.  He then went to work in the yard of a sawmill as one of a gang engaged in piling wood, but never had anything to do with the building of stagings.  In the yard there was a staging erected by the side of a wood pile for the purpose of enabling the workmen to pile the wood higher.  The staging was held in place by brackets fastened to the wood pile by cleats, and was designed to hold a quantity of wood which was to be brought there in carts and thrown upon it from the ground, and also two men, who were expected to get upon it and throw the wood on the pile.  By reason of the improper construction or overloading of the staging, it fell with A., who had been ordered by the foreman of the gang to go upon it and pile up the wood, and he was injured.  *Held,* in an action for the injury, that it did not appear that he understood and appreciated the danger so far that he could be said to have assumed the risk.

A person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight may be allowed to give his opinion as to whether a staging erected in a specified way can safely be trusted to carry a particular load.

The question whether a witness was an expert is not open on a bill of exceptions which fails to state the evidence upon which the decision that he was qualified was made.

TORT, for personal injuries occasioned to the plaintiff, while in the employ of the defendant, by the fall of a staging upon which he was at work.  The declaration contained three counts, the first at common law, and the second and third under the employers' liability act, St. 1887, c. 270, § 1, cls. 1, 2, the second alleging that the injury was caused by a defect in the ways, works, or machinery of the defendant, and the third alleging that the injury was received by reason of the negligence of one

Thomas H. Campbell, a person employed by the defendant, and intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence.   Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

The defendant was a corporation engaged in the general business of running a sawmill and lumber yard at Holyoke.   The staging in question was used in piling the wood, which was drawn from the mill to the wood pile in cart loads; it was first thrown on the ground, then thrown from the ground to the staging, and from the staging on to the pile.   The wood which formed the pile was the ends of sawed lumber, which were about stove lengths, and of different sizes.   The staging was about fifteen feet high, twenty feet long, and five feet wide, and was held in its place by three brackets, or triangles.   Each bracket was fastened to the wood pile by six wooden cleats, one end of each cleat being nailed to the wood pile and the other end to the upright of the bracket, there being three nails at each end of the cleat, and each nail being about two inches long; the cleats were about a foot and a half or two feet long, about two inches wide, and about an inch thick.   The brackets were made of three pieces of wood, and, at the time of the injury to the plaintiff, had been in use this same way about two years without accident.   Planking to form the platform was placed on the top of the brackets.   Some of the witnesses for the plaintiff testified that there was one prop or support under the outer edge of one end of the staging when it fell; also that the wood in the pile was soft, and that nails could not be so firmly attached to soft as to hard wood; but there was evidence in behalf of the defendant that nails would hold more firmly in soft than in hard wood.   The staging was put up at three or four o'clock on the afternoon of May 16, 1892, and fell at about seven o'clock on the next morning.   The stagings were generally in use at one place from four days to a week at a time.

The brackets were moved about from place to place as the progress of the work required.   One of the witnesses for the plaintiff testified that the uprights of the brackets were split, and had nail-holes in them from former use; that there were no props or supports specially designed for the outside of the

staging; and that lumber could be obtained in the yard of the defendant from which they could be made. The evidence tended to show that there were sufficient material and nails at hand.

The staging fell by pulling away from the pile of wood, and the evidence tended to show that the cleats remained fastened to the bracket after the fall of the staging, and that none of the material broke or gave way otherwise than that the cleats were forced away from the wood pile.

The plaintiff testified that he had been in this country about ten years; that he worked a year and a half in the yard of the Hampden Mill, and about seven years in a dye-house at Holyoke; that he went to work for the defendant in March, 1892, and worked until he was injured; that he never had anything to do with staging, and had nothing to do with building the staging which fell. In this he was corroborated by one Leary, a witness for the plaintiff.

The business at the defendant's mill was under the charge of George S. Lewis, manager and assistant treasurer. There were about 125 or 130 men employed at the mill and in the yard.

Robert Welch testified for the plaintiff that Ronald Gillis was superintendent of the yard and had charge of the piling gang before Thomas H. Campbell, named in the declaration, was hired; that while in charge of the piling gang Gillis made these brackets and built the staging to the pile; and that, when Campbell was hired, Campbell built the staging. Some of the witnesses for the plaintiff testified that Campbell ordered one Leary, a member of the piling gang, to assist him in building the staging which fell, and Leary did assist him; that about a month before it fell, Campbell built this staging and ordered another member of the piling gang to assist him; that the latter did assist him; and that these were the only times the staging was built by Campbell. All the witnesses for the plaintiff testified that no one gave any orders to the piling gang except Campbell; that he was the foreman of the gang; that he sometimes worked with his hands; that he worked when he pleased, and did whatever work he pleased; that when he was working he was overseeing the men and giving them directions; that these two stagings were the only ones built previously to the accident while Campbell was with the gang; that he looked to see if the

men were on hand at the proper time, and made inquiries as to absent ones; that he placed the men at work wherever he saw fit; that he hired the plaintiff and one Sullivan at different times upon their application to him for a job; and that after the accident Campbell rebuilt the staging.

The office of the defendant was in the yard, and Lewis was much of the time in the office.   Some of the witnesses for the plaintiff testified that about half a load of wood was put upon the staging at a time previously to the loads which were put upon the staging which fell, and that after the staging was built, on the day preceding the accident, a whole load of wood was put on by order of Campbell.   The plaintiff testified that, on the morning of the accident, Campbell told the men to put a whole load of wood upon the staging, and in this he was corroborated by one Welch and by one Hannifin, but on cross-examination the latter testified that the order was to "put the load on"; that Campbell remained at the pile twenty minutes or half an hour after he gave the order, and then went to another pile, and was not present when the whole load was put on, nor when the staging fell, but was in the yard; that Campbell directed the plaintiff and Leary to go upon the staging and throw the wood upon the pile; that the plaintiff had just stepped upon the platform, and Leary was about to step on, when the staging gave way and fell, carrying the plaintiff down with it; and that it was usual to have two men stand upon the staging to throw the wood on the pile.

Welch testified for the plaintiff that it was usual to have two supports to the outside of the stagings which had been built previously to the one which fell, one under each end of the staging.

Lewis testified for the defendant as follows: "I take direct supervision of the yard every day when I am there; Gillis is superintendent of the yard; this is his business; he principally devotes his attention to seeing that the men do their duty in piling the wood, and attending to the sale of the wood.   In March, 1892, I hired one Thomas H. Campbell to work in connection with the piling gang; Campbell was put to work because he was more competent than the other men I had on the wood in the yard; he had some brief authority; I gave him authority to direct the motions of the men in regard to their

work and to work with them; he had no authority to hire any-
body, and I never knew him to discharge anybody; he was
always working when I saw him; I made it a point, as I always
do with all the men, to see that he was at work as one of the
crew; I had no knowledge that the staging was overloaded, or
that Campbell gave any orders to overload the staging."

On cross-examination, he testified that he was not an expert
in relation to the building of stagings; that he did not know
how many stagings were in use in the yard; that he never had
any particular cause to examine stagings; and that he hired
Campbell to work with the men, and to see that they did their
work, and that there were not too many on the pile.

The plaintiff asked Lewis the following question: " Did not
Campbell have general authority over these men, telling them
what to do, and what pile to go to, and how many to do the
piling, and who to go on the staging, and who to go on the pile,
and who not ? "   To which the witness answered, " Yes."

Gillis testified for the defendant that he was the foreman of
the yard, and had general charge of the yard, having special
charge of selling the wood of the defendant corporation; that
Campbell and his gang were under Gillis's authority; that
Campbell did manual work; that that was his principal work,
but that he had some authority over the men; that at one time
Campbell came to him and said he wanted some more men,
and he gave him directions to hire them; that he kept the time
of Campbell and the men of his gang, and paid them with the
money he received from the office; that he had no knowledge
that the staging was put up or who put it up; that there was an
abundance of nails and material for the erection of the staging;
that there was no defect in the materials of which it was com-
posed, and he had no knowledge that at any time a whole load
of wood was put upon the staging; that the work of putting the
staging together was left to the men; that it was not assigned
to any one in particular; that the staging was moved about from
place to place as the work required, and was secured to the pile;
that it was the duty of the men to fasten and secure it; and
that this duty was not assigned to any one, being left to the men
themselves.

On cross-examination, he testified that he would not be sur-

prised if Campbell hired a man ; that when he saw men at work who had been hired by Campbell, he made no inquiries in regard to them ; that there were about twenty-five or thirty men at work in the yard ; that he had no assistant in the work of selling wood, and he attended to that business himself ; that there was a separate gang of about fifteen men for piling wood ; that the yard was large ; and that this gang might be at work piling wood a quarter of a mile from where he was at work selling it.

Emory A. Ellsworth, an engineer, called as a witness, was asked as follows : " Now, take a staging fifteen feet high, built with those brackets (showing photograph), a bracket made of three pieces, and fastened to the wood pile with those cross sticks on each side of each upright, there being three uprights, with three nails driven at each end of the cross stick, one into the wood pile and the others into the bracket, there being three brackets and eighteen of those cross sticks together, fastened in that manner, the staging being about five feet wide and about twenty feet long, and having one upright in front, in your judgment would that be a proper staging to build, for putting on a half-load of wood, a dump cart being a load, on the staging, and two men to stand on the staging to throw it up on the pile ? "

To this question the defendant objected, but the judge permitted the witness to answer, subject to the defendant's exception, and he answered that such a staging would be improper.

At the close of the evidence, the plaintiff was required to elect whether he would go to the jury on the first count, or on the second and third counts, and he elected to go upon the latter counts.

The defendant requested the judge to rule as follows : — " 1. Upon the whole evidence the plaintiff is not entitled to recover under the second count of his declaration. 2. Upon the whole evidence the plaintiff is not entitled to recover under the third count of his declaration." The judge declined so to rule.

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*J. B. Carroll,* for the defendant.

*T. B. O'Donnell,* for the plaintiff.

KNOWLTON, J. The plaintiff was permitted to go to the jury on two counts under the employers' liability act, (St. 1887, c. 270,) one alleging an injury by reason of a defect in

the ways, works, or machinery of the defendant, and the other an injury received by reason of the negligence of a person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence.   In regard to each count, the defendant asked for a ruling that there was no evidence to support it; and the principal exceptions arise from the refusal of the presiding justice to give either of these rulings.

The plaintiff was injured by the fall of a staging on which he was working.   This staging was erected by the side of a wood pile for the purpose of enabling the workmen to pile the wood higher.   It was about fifteen feet high, twenty feet long, and five feet wide, and it was taken down and put up from time to time in different places, and was intended to be used from four days to a week at a time in each place where it was erected. We think it was competent for the jury to find that the staging when erected was a part of the defendant's ways, works, or machinery.

Was there evidence that it was defective?   It was held in place by three triangles or brackets, which were put up and taken down as a part of the staging, each of which was fastened to the wood pile by six wooden cleats, one end of each cleat being fastened into the end of one or more sticks of wood in the wood pile, and the other end to an upright part of the bracket. There were three nails at each end of each cleat, and the cleats were about a foot and a half or two feet long, about two inches wide, and about an inch thick.   There was one prop or support under the outer edge of one end of the staging when it fell.   The staging was designed to hold a quantity of wood, which was to be brought there in carts and thrown upon it from the ground, and also two men, who were expected to get upon it and throw the wood upon the pile.   It was constructed in such a way that a load upon it would have a great tendency to draw out the cleats from the pile to which they were fastened, and it was a question of fact for the jury whether it was safely and properly constructed in reference to the use for which it was intended.   The judge rightly refused to rule that there was no evidence for the jury under this count.   There was evidence that this staging was erected, and that the work of piling the wood was going

on under the superintendence of one Campbell, and we are of opinion that the jury were well warranted in finding that his principal duty was that of superintendence. There was also evidence from which they might infer that he was negligent, either in not seeing that the staging was properly constructed, or in permitting it to be overloaded. The fact that it fell in the manner and under the circumstances described is proper for consideration, as tending to show that he was negligent. *Arkerson* v. *Dennison,* 117 Mass. 407, 411. There was evidence that he ordered or permitted a whole cart load of wood to be put upon the staging at the time the plaintiff was injured, when it had been the custom to put but half a load on at one time.

It did not appear that the plaintiff understood and appreciated the danger of injury from working on the staging so far that he can be said to have assumed the risk. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *Mahoney* v. *Dore,* 155 Mass. 513. We are of opinion that this count of the declaration was rightly submitted to the jury.

The only other exception was to the admission of the testimony of Ellsworth, the engineer. We are of opinion that a person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight may be allowed to give his opinion as to whether a staging erected in a specified way can safely be trusted to carry a particular load. That was the substance of the question put in this case. Although, by reason of its form, it did not direct the attention of the witness to the elements of fact involved so particularly as it might have done, it was not so objectionable as to be incompetent. *Poole* v. *Dean,* 152 Mass. 589.

It is apparent that the witness was found by the court to be a competent expert. What the evidence was on which this finding was made does not appear beyond the fact that he was an engineer. If the defendant desired us to revise the presiding justice's finding of fact on this point, he should have inserted in his bill of exceptions all the material evidence bearing upon it. The question whether the witness was an expert is not open. *Campbell* v. *Russell,* 139 Mass. 278. *Perkins* v. *Stickney,* 132 Mass. 217.

*Exceptions overruled.*