## THOMAS H. BRADY *vs.* ORLANDO W. NORCROSS.

Hampden.    September 28, 1898. — January 6, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Defective Appliance — Inference of Negligence — Due Care — Parties — Evidence.*

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the fall of a plank on which the plaintiff was sitting while at work, and which was part of a temporary staging built to be used, and which had been used for six months by workmen in finishing the interior of a room in a building under construction, the fall being caused by the giving way of one of the brackets on which the plank was laid, by reason of the splitting of the boards composing the bracket where it was nailed to an upright, if the evidence does not tend to show that the defendant furnished the staging as a structure, nor that he assumed to exercise any control or supervision as to how it should be built or kept or adapted for the work, nor that he failed to furnish a sufficient quantity of suitable materials, nor that he employed improper workmen, the mere fact of the giving way of the bracket does not warrant the inference of negligence on his part.    And the plaintiff would seem to have been in the exercise of reasonable care, and not to have been aware that he was exposed to any risks except those incident to working upon a safe staging.

The non-joinder of a partner is no defence to an action against his copartner for personal injuries sustained by an employee of the firm.

If evidence, the admission of which is excepted to, seems to have been competent upon the issues raised by one of two counts, and when those issues disappeared the excepting party did not ask that the evidence should be withdrawn from the consideration of the jury, who returned a verdict on the other count, the exception will not be sustained.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the fall of a part of a staging on which he was sitting while at work as a painter. The declaration contained three counts under the employers' liability act, St. 1887, c. 270, one of which was subsequently waived; and one at common law, alleging failure to provide the plaintiff with safe instrumentalities for his work. At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiff under the fourth count; and the defendant alleged exceptions, which appear in the opinion

*H. Parker & C. C. Milton*, for the defendant.

*J. B. Carroll & W. H. McClintock*, (*J. F. Stapleton, Jr.* with them,) for the plaintiff.

BARKER, J. The plaintiff, a painter in a building under construction, fell eighteen or twenty feet to the floor of a large room, from a plank which was part of a staging built in that room to be used there by masons and painters in finishing the interior of that room, and to be taken apart and removed when that work should be finished. The staging was made of ordinary construction timber, and consisted of uprights, held in place by ledger boards or braces, to which uprights were nailed tiers of brackets, upon which were laid, as the work might require, loose planks to support the workmen. Each bracket consisted of two boards nailed together at one end, and was fastened to an upright by nails driven through the other ends of the boards of which the bracket was made. One of the brackets, while helping to bear the weight of two planks and of three painters, gave way, the boards of which it was made splitting where it was nailed, and letting down the planks and the workmen. The plaintiff has obtained a verdict in tort, upon a common law count, against one of his employers. At the trial the defendant introduced no evidence, and his principal exception is to the refusal to rule that there was no evidence

upon which the plaintiff could recover upon the common law count.

As this was a temporary staging, intended to be used only in finishing the room where it was constructed, if the plaintiff's employers furnished sufficient quantities of suitable materials for staging, employed suitable workmen, and did not themselves undertake the duty of furnishing the staging as a structure, but only of supplying materials and labor by which it might be built and from time to time adapted to the work, and if the duty of furnishing or adapting the staging as an appliance for use in the work of finishing the room was intrusted to or assumed by the workmen themselves, within the scope of their employment, the employers are not answerable to the plaintiff for his injury. *Kelley* v. *Norcross*, 121 Mass. 508. *Colton* v. *Richards*, 123 Mass. 484. *Killea* v. *Faxon*, 125 Mass. 485. *Clark* v. *Soule*, 137 Mass. 380. *Hoppin* v. *Worcester*, 140 Mass. 222. *O'Connor* v. *Neal*, 153 Mass. 281. *Kennedy* v. *Spring*, 160 Mass. 203. *Adasken* v. *Gilbert*, 165 Mass. 443. *Kalleck* v. *Deering*, 169 Mass. 200.

On the other hand, if the staging was furnished by the employers as a completed structure, or if they themselves supervised and directed its construction, or if, relying upon its construction by their workmen for themselves, the employers negligently failed to provide suitable and sufficient materials, or negligently hired incompetent workmen, the employers might be answerable to the plaintiff. *Arkerson* v. *Dennison*, 117 Mass. 407. *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487. *Clark* v. *Soule*, 137 Mass. 380. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. *Twomey* v. *Swift*, 163 Mass. 273.

There was no testimony tending to show that the employers furnished the staging as a completed structure, or that either of them exercised or assumed to exercise any personal oversight over its construction. Its history was not fully or satisfactorily disclosed by the evidence. The plaintiff began working in the building in August, 1896, and was hurt on March 2, 1897. He testified that the staging was in the room when he began to work in the building. Douglass, a quasi foreman of the painters but who also painted when he had time, testified that he began to work in the building about three months before the accident, and that the staging was then in the room. Ramilly, a painter,

who fell at the same time with the plaintiff, testified that he could not tell who built the staging. Knight, a painter at work upon the staging at the same time, testified that he did not know who built the staging, but that it was built before he came there to work in October, 1896. Pike, a painter who went there to work in August, 1896, testified that the painters did nothing about building the staging in that room; that he did not know the men who built it; that it was built under Smith's orders; and that the witness thought it was built after he came there, but was not sure. These were all the witnesses except Smith, who testified merely that he was employed by Norcross Brothers upon the building, and that they were doing the entire work, except that there was a sub-contract for the mason work. There was no other evidence as to how the staging was originally erected. Pike testified that Smith was a carpenter, and that he gave orders and directions, and that no one gave orders and directions to Smith except one Connors, whose relation to the work does not otherwise appear. Douglass also testified that Smith gave orders to build stagings, and orders to take them down when the workmen were through with them, and that the witness himself gave orders, and if there was trestle work would say, " Come, boys, let us put the trestle in that room and go on to it," and that he said this in regard to staging and trestle work. Knight also testified, " We painters did not customarily have anything to do with reference to the building or bracing of stagings," and that he had observed the structure of stagings in that building only in the store on the ground floor, and did not notice whether they were built under the direction or order of anybody. Douglass further testified to the previous condition of the staging, and to certain things which occurred on the Saturday previous to the accident, with reference to the preparation of the staging for its use by the painters in doing the work on which they were engaged when the accident happened. In substance this testimony was, that when he first went on the staging to prime the walls it seemed to be all right and did not lean, and he had no trouble with it; that when he came to the second coat another staging had been built over the main stair, and there were braces which held both stagings together and made them firm. This other staging had been taken down on

Friday or Saturday, under Smith's directions, and when Douglass on Saturday went on the remaining staging he noticed that it was shaky and leaned over toward the south wall, and he thought it ought to be braced to make it more firm. So on this Saturday, before the accident which occurred on the Tuesday following, Douglass, thinking that the staging was weak, and not safe to go on, asked Smith to fix the staging, to brace it up. Smith said it was all right, "just as it was when we [the painters] worked on it before," and "just as it was when the masons worked on it"; that he had taken no braces out; that he had raised the uprights to put a floor under it; that he did not know that that would have a tendency to weaken it. To this Douglass replied that he thought it would, but Smith again said he thought it was all right, to which Douglass replied, "I am going on there Monday with fifteen or twenty men, and I think the stage ought to be looked after"; but Smith said the staging was all right, and did not go with Douglass into the room where the staging was. Douglass then, with another painter under his directions, went and got more braces and braced the staging from the top, and went down in the yard and got planks and put them on and then put men to work on the staging to paint the ceiling of the room. He did not make any investigation of the lower part of the staging, and testified that, so far as his knowledge went, it was all right. On cross-examination Douglass testified that all that was done in the way of rectifying the condition in which he found the staging on Saturday was done by himself and another painter under his direction; that they did something to fix it up; that when he went to fix it, he got the material out of the yard; and he added: "There wasn't material there to fix up the staging; these planks I got out in the yard were put on top of the staging, but these ledger boards were all there; these I didn't have anything to do with; where I went to get the material for that staging, out in the yard, there was other material of the same kind; I selected whatever planking or other material I and the other painters put upon that staging." He further testified that it was he and the other painters who got planks and laid them on the top brackets, and that they braced over the uprights against the iron casing, but did not nail braces across the staging, and that whatever was

done to the staging to fix it for the work was done by himself and another painter.

The evidence was that the boards of which the brackets were made were of spruce an inch and an eighth thick, and from four to eight inches wide. One end of the plank on which the plaintiff was sitting rested on the bracket which broke, and the other end rested on another bracket. The plaintiff alone was on this plank, but one end of another plank rested on the same bracket, and on this other plank were two other men. The fall of the plank on which the plaintiff was sitting also broke the bracket on which the other end of the plank had rested. The only theory of the accident seems to have been that the strain of the two planks and the three men split the boards on the bracket where it was nailed, and let it down. It should also be stated that one of the uprights of the staging had at some time been cut off some feet above the floor, although neither this fact nor the leaning which had been remedied by Douglass on the Saturday before the accident seems to have had anything to do with the giving way of the bracket.

It would seem a very questionable exercise of the power of drawing inferences of fact from facts proved to find from the splitting of the boards of the bracket that the materials of which it was built were originally defective or unsuitable for the purpose to which they were put, or that the bracket was not originally a safe one. The staging had been in use by both masons and painters for more than six months without accident. But if we assume that the giving way of the bracket was of itself evidence of negligence in its construction on the part of some one, as was assumed in *Arkerson* v. *Dennison*, 117 Mass. 407, 411, and in *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131, 139, we think it was not evidence from which it could fairly be inferred that the negligence was that of the plaintiff's employers. The burden was upon the plaintiff to show that he was hurt by their fault. The evidence did not tend to show that they furnished the staging as a structure, nor that they assumed to exercise any control or supervision as to how it should be built or kept or adapted for the work, nor that they failed to furnish a sufficient quantity of suitable materials, nor that they employed improper workmen. For more than six months before

the accident this and other temporary stagings in use in the same building had been in the care of the workmen themselves, and not of the plaintiff's employers.   In *Arkerson* v. *Dennison* the staging had been in use but two weeks, and in *Prendible* v. *Connecticut River Manuf. Co.* the staging was one to be moved about and used in different localities, and was held to be part of the employer's works, ways, and machinery.  That the employers were at fault in the present instance was an inference which a jury ought not to be allowed to draw from the mere fact of the giving way of the bracket, and there was nothing else in the evidence to justify such a finding.

None of the other grounds of exception seem to us sound. The plaintiff would seem to have been in the exercise of reasonable care, and not to have been aware that he was exposed to any risks except those incident to working upon a safe staging.

Although the suit is against one only of the plaintiff's employers, the non-joinder of the defendant's copartner is no defence.  *Milford* v. *Holbrook*, 9 Allen, 17, 22.   The evidence the admission of which was excepted to seems to have been competent upon the issues raised by the other count, and when those issues disappeared the defendant did not ask that the evidence should be withdrawn from the consideration of the jury.                                                *Exceptions sustained.*