JOHN DUNLEAVY *vs.* MAURICE F. SULLIVAN & another.

Hampden.    September 22, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

At the trial of an action of tort against two partners, C. and S., for personal injuries received by the plaintiff while in the defendants' employ through the falling of a temporary staging alleged to have been caused by defective material from which it was made, it appeared that the work upon which the plaintiff was engaged when injured was the putting of new metal sheathing on the outside of a building. There was evidence tending to show that, in the construction of the stagings upon which the plaintiff worked, two blocks of a size two feet by three feet were used by being nailed to the building, and that there were no other blocks in use on the work; that the work reached a point where the staging which was being used was inadequate, and that, at about noon, the plaintiff and his fellow workman told the defendant C. that a swinging stage was necessary, that the defendant C. told the defendant S. to get such a stage for the workmen, that the defendants did not own such a stage, but that the defendant S. went with the plaintiff and his fellow workman to the building where the work was being done, to " see what we can do," and the plaintiff's fellow workman suggested a device which required that two blocks should be nailed to the building upon which should rest the ends of cross pieces which, in turn, should support a ladder for the plaintiff to work upon, that S. assented to the arrangement and departed, that the plaintiff and his fellow workman thereafter constructed the stage as planned, using both of the blocks above referred to, which already had been nailed and renailed to the building six times, and which on this occasion the plaintiff and his fellow workman nailed vertically to the building, so that the cross pieces supporting the ladder upon which they stood rested upon the ends of the blocks, and that, while they were standing on the staging at work about four hours later, it fell because one of the blocks split lengthwise. The presiding judge refused to direct a verdict for the defendants, and they excepted. *Held,* that the exception must be overruled, since it was the defendants' duty to furnish proper materials for the staging, and there was evidence which would warrant a finding that the defendants authorized the use of the block which broke, that the block was unsuitable and, if it had been properly inspected, would have been discovered to be so.

TORT for personal injuries received by the plaintiff because of the giving way of a staging on which the plaintiff was at work for the defendants. Writ in the Superior Court for the county of Hampden dated August 16, 1907.

There was a trial before *Wait,* J., and a verdict for the plaintiff. The defendants alleged exceptions.

The facts are stated in the opinion.

*C. T. Callahan,* for the defendants.

*W. H. McClintock,* for the plaintiff.

LORING, J. This is an action for personal injuries caused by the giving way of a staging on which the plaintiff was at work. The plaintiff was a servant of the defendants, employed in putting new metal sheathing on the outside of a building known as the Russell building, on Suffolk Street in Holyoke. This building was thirty feet high in front, that is, on Suffolk Street, with a roof sloping down toward the back; at the back it was twenty-one to twenty-three feet high. There was a conflict as to the depth of the building, the plaintiff testifying that it was thirty, and one of the defendants that it was ninety, feet deep.

Next to the Russell building was a low wooden shed, also facing on Suffolk Street, which extended back about the same length as the Russell building. This shed was from twelve to eighteen feet high in front. Its roof also sloped down toward the back, and at the back it was a foot lower than at the front. There was some evidence that there was an addition in the rear which was eight feet higher. But that is not material.

The space between the Russell building and this shed was put by the plaintiff at eighteen inches, and by one of the defendants at twenty-one inches.

The work which the defendants had undertaken to do consisted in stripping off old and putting new metal sheathing on the outside of the Russell building. This metal sheathing came in pieces four feet long and two feet four inches wide.

The plaintiff testified in his own behalf, and called as a witness one Bramham, who was still in the defendants' employ.

The story told by Bramham was that while stripping off the old and putting on the new metal sheathing between the two buildings below the roof of the shed, the defendants' workmen had constructed for themselves a staging of the following description: Two sets of cleats were nailed to each building. On these sets of cleats cross pieces were laid. On these two sets of cross pieces a twelve foot ladder was placed, and on the ladder boards were laid, on which the men stood while at their work.

While working between the buildings, seven eighths boards had been used as cleats, but, when the work progressed to the point where a staging above the roof of the shed became necessary, he, or he with another, went to a building known as the Smith building, where other employees of the defendants were at work, and picked out two 2 × 3 boards belonging to one Prew, who was the contractor for the carpenter work on that building, and used these as the cleats nailed on to the Russell building. Opposite each of these two cleats was placed a ladder, the foot resting on the roof of the shed and the top resting against the side of the Russell building. Two cross pieces were then placed in position, one end resting on the cleat and the other on a rung of one of the ladders. Then, as before, a ladder was laid on these cross pieces, on this ladder boards were placed, and the staging was complete.

The accident happened about half past four on a Wednesday afternoon, and was caused by one of these 2 × 3 boards splitting lengthwise; that is to say, the board in question had been nailed on the Russell building lengthwise, up and down; it had split in two, the two halves had dropped off, one on each side of the nails, and had let down that end of the staging. By Bramham's story the two 2 × 3 boards for cleats were procured at the Smith building that day. In addition they were by his testimony procured on the employees' own motion and without the knowledge of the defendants. Bramham testified that they got the 2 × 3 boards, in place of using the seven eighths boards used before, because they would give better security on the staging, and because the seven eighths boards which had been in use " wouldn't have been sufficient."

The plaintiff's testimony was that these 2 × 3 boards had been procured some two weeks before the day of the accident, when the work on the Russell building began. He testified that one afternoon the defendant Carmody told him (the plaintiff) to go with Bramham to work on the Russell building; that Bramham then said that they would have to have a staging between the two buildings and Carmody told them to " Go and pick it out. Find out if there is anything down cellar"; that they went to the cellar and found nothing but inch boards, " that came off packing cases, probably, sent or shipped with

goods "; that thereupon they went to the Smith building and got two pieces of 2 × 3 boards which were used from the beginning and nailed and renailed on the Russell building from time to time, as the staging had to be put higher up in the course of the work. And that they used some inch boards found in the defendants' cellar for the cleats on the shed until the work was finished below the roof of the shed, when, as we have said, the rung of a ladder resting on the roof of the shed was substituted for a cleat nailed to its side.

The defendants' contention is that no matter which of these two stories was believed by the jury, they are not liable. Their contention is that although they were bound to furnish materials for the construction of the staging which in the case at bar confessedly was left to be constructed by the workmen, they were not in default in that respect here; for on the plaintiff's own story they had told the plaintiff and Bramham to see if there was anything in the cellar which would do, and the plaintiff and Bramham, in place of reporting that there was not, as they were called upon to do under those circumstances, procured for themselves and without the defendants' knowledge the defective board in question. They also contend that, if Bramham's story was believed, the conclusion was even stronger that the plaintiff and Bramham had chosen to provide themselves with materials in place of having the defendants furnish them.

We do not find it necessary to consider whether the defendants are correct in this contention as to the effect of Carmody's direction to "pick it out" and "find out if there is anything in the cellar"; there are some facts which we have not found it necessary to state which might have a bearing on that. For we are of opinion that, if it be assumed that Bramham and the plaintiff were under an obligation to report to Carmody that there was no fit material in the cellar, the jury were warranted in finding that the defendants through Sullivan afterwards adopted the 2 × 3 boards brought from the Smith building as their material for this staging.

The plaintiff testified that at noon on the day of the accident the work had reached the point where it could not be done standing on the roof of the shed, and that before going back to work in the afternoon of that day he with Bramham had a talk

with the defendant Carmody. At this talk Bramham told Carmody that they could not go any further without a swinging stage, and thereupon Carmody told Sullivan (the other defendant) to get a swinging stage for Bramham and the plaintiff. On the uncontradicted evidence the defendants did not own a swinging stage. Sullivan, accompanied by Bramham and the plaintiff, then went to a painter and tried to borrow a stage but without success. Thereupon Sullivan said : " Come down to the building and see what we can do." At the building Bramham said : "If we should nail two blocks on the side of the building, and put a ladder up, and make it run across, pass from the rung of the ladder to this block, I should think we would get along all right." To this Sullivan assented and told Bramham and the plaintiff to go to the shop and get two ladders in addition to the ladder they already had there. This they did. When they came back Sullivan had gone. The staging was made and the accident happened (as we have said) on the same afternoon.

For the staging to be constructed as Bramham suggested it was the defendants' duty to furnish proper materials under the settled rule in this connection. See for example *Brady* v. *Norcross*, 172 Mass. 331 ; *Thompson* v. *Worcester*, 184 Mass. 354.

The jury were warranted in finding that the 2 × 3 boards, one of which caused the accident now in question, were then nailed on the Russel building, and that Sullivan, by adopting Bramham's suggestion and not offering other material for use in making the cleats which Bramham's suggestion required, authorized the use of these boards and so made them their own for the purpose of this staging.

The defendants have also contended that there was no evidence that the 2 × 3 board which split was unsuitable. In support of this contention they urge that on the evidence it was no more likely that the split came from the wood being unsuitable than from its having been nailed and renailed on to the Russell building some six times before the time in question. But the jury were warranted in finding that the board was adopted by the defendants as their material after it had been renailed these six times ; and we are of opinion that the fact that such a board split under the circumstances under which it split in the case at bar is evidence from which the jury were warranted

in inferring that it would have been seen to be unfit had it been inspected.

The question of evidence raised by the defendants not having been argued must be treated as waived, and need not even be stated.

*Exceptions overruled.*