MARCUS M. NICHOLS *vs.* BOSTON AND MAINE RAILROAD.

Worcester.    October 3, 1910. — October 18, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

In an action against a railroad corporation by a painter employed in a repair shop of the defendant, for personal injuries, if it appears that the plaintiff's injuries were caused by the falling of a temporary staging on which the plaintiff was standing, made of wooden horses, blocks and planks easily movable and not fastened together, which had been put around the car that the plaintiff was painting by carpenters of the defendant for their own use, and from which a plank had been taken by another carpenter of the defendant working on another car, and if it appears that it was no part of the duty of the carpenters to construct stagings for the use of the other workmen in the repair shop and that it was the duty of the different classes of workmen successively employed upon a car to provide stagings for themselves from the materials at hand including those left by the workmen who preceded them so far as they were needed, the defendant is not liable.

Wooden horses, blocks and planks easily movable and not fastened together, standing in a repair shop of a railroad corporation in the form of a staging erected by carpenters of the corporation for their own use in repairing cars and left there by them, after they have done with the staging, to be put into such form and used in such places as best may serve the convenience of the corporation's other workmen, are not " ways, works or machinery " of the corporation within the meaning of the employers' liability act.

TORT against the Boston and Maine Railroad for personal injuries sustained while the plaintiff was in the employ of the defendant as a painter, alleged to have been caused by the falling of a staging on which the plaintiff was standing while painting the outside of a freight car in a repair shop of the defendant. Writ dated April 16, 1909.

In the Superior Court the case was tried before *Aiken,* C. J. The portion of the evidence material to the decision is described in the opinion.

In the course of the trial the plaintiff offered as experts two contractors, who had done a general building business but never had had any experience in building or painting freight cars. These men were in court, and had listened to the description of the staging. They then were asked, subject to the objection of and an exception taken by the defendant, what in their opinion

caused the accident. The admission of their answers to this question has been made immaterial by the decision of this court.

At the close of the evidence the Chief Justice refused to rule that the plaintiff was not entitled to recover and to order a verdict for the defendant. He also refused to make other rulings requested by the defendant, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,380. The defendant alleged exceptions.

*C. M. Thayer*, for the defendant.

*D. I. Walsh*, for the plaintiff.

KNOWLTON, C. J. The plaintiff, a painter, brings this action to recover damages for injuries caused by the falling of a staging upon which he was standing while painting the outside of a car. The car in question was in the repair shop to have some work done upon it by carpenters and painters. Two carpenters who were at work upon the car had constructed a staging in the following way : A wooden horse was placed at one corner of the car, another horse was placed at one side of the door in the car, the door being in the centre, a third horse was placed on the other side of the door and a fourth horse at the other corner of the car. Upon the top of each one of these horses a wooden block was placed, in order that the plank upon which the carpenters were to stand might be raised higher than it would stand if it rested on the top of the horse. Upon the top of these blocks one plank was placed, which rested on the block on the first corner horse and on the block on the horse next to it. A second plank rested on the block on the horse at the other corner and on the horse nearest to it. This left a space between the middle horses, in front of the door, without any plank. A plank was then placed resting upon the horses on either side of the door, thus making a continuous staging along the side of the car. After the carpenters had been using this staging for about two weeks, they finished their work on the side of the car, and were working on the roof the day before the accident. On that day another carpenter, who was working on a car near by, asked the carpenters on the roof if they were through with the staging and if he could take a plank. They said that they were, and he removed the plank which connected the horses that were on either

side of the door, and after using it, left it on the ground a short distance from the car. This was the condition of the staging when the plaintiff began the work of painting the outside of the car. He began at one corner and painted until he reached a point where the sliding door in the freight car had to be closed in order to enable him to paint that part of the car which was back of the door. While on the staging he attempted to shut the door, and while he was pushing against the door the staging fell, causing the injury for which this action was brought. It is not contended that any of the planks, the horses or the blocks that were used in the construction of the staging were defective. It also appeared that horses and planks and blocks were arranged in the same way upon the opposite side of the car, except that the plank before the door had not been removed. The horses at the four corners of the car projected a little beyond the respective corners, and planks were laid upon them, across each end of the car, so that while the carpenters were at work before the plank was removed there was a continuous staging around the car.

Upon the undisputed testimony of numerous witnesses it appeared that there were horses and planks for these uses in various places all over the shop, and there was evidence that blocks were often used by the carpenters, on top of the horses, to make the staging higher. There was also uncontradicted testimony from these witnesses that it was the duty of the different classes of workmen employed upon a car at different stages of the work to provide stagings for themselves from the materials at hand, so far as they needed them. These materials, so used, were never nailed or fastened together, but the horses were set up with or without blocks upon them, and the planks were laid upon them. As the carpenters were the first workmen employed upon the body of the car they found it necessary to use these materials for the construction of a staging, and often the whole or a part of the materials would be left standing by the car and afterwards would be used by painters, tinners or others who succeeded them, who thereby saved themselves the trouble of getting materials elsewhere and putting them in place. Witnesses also testified that it was no part of the duty of the carpenters to construct stagings for the use of other workmen. All

this was uncontradicted. The judge in his charge said: "You will bear in mind, gentlemen of the jury, that there was no obligation on the part of the carpenters to construct a staging for the painter." There was no evidence that anybody else than the carpenters provided or ever undertook to provide a staging for any of the painters or other workmen. The plaintiff's case rests entirely upon the fact that he was injured on a staging constructed by carpenters for their own use, from which a plank had been removed by another carpenter for his use elsewhere.

The plaintiff's own testimony, which is .reported by question and answer, did not contradict the testimony of the others on this point. He testified as follows: " Q. Did you ever construct any staging out of horses or planks around in the freight yard in that establishment before the date of this injury? A. No, sir; not a continuous staging around a car. — Q. What appliance did you use when you did not need a continuous staging? A. I used a horse and planks, or ladder chiefly, as occasion required. — Q. So that you had to use a ladder or horse? A. Sometimes get upon the horse. Sometimes if a space eight or ten feet to paint I would place the horse here and a horse here and put a plank up and paint on that staging until I finished the job. — Q. But never had occasion and never did prepare a continuous staging? A. No, sir; wasn't my business."

This negation was only as to the construction of a continuous staging around a car; but it is apparent, as was testified by the witness Bigelow, that for a painter to build a continuous staging around a car would not be a convenient way of doing the work; that it would be, in the words of the witness, "right in his way," and that painters never built such a staging. It was testified by the plaintiff and other witnesses that the staging built by the carpenters was much higher than was needed by the painters. As showing that the defendant did not assume to provide stagings for the painters on freight cars, but left them to provide for themselves with the materials furnished, the plaintiff testified further as follows: " Q. Well, suppose that you found that the car wanted to be painted, some painting done on the roof, how did you get on the roof? A. I either got up on a ladder, would go up the regular ladder on the end of the car that is attached to the car. — Q. There were some ladders that you could use? .

A. Yes. — Q. Did you go and get a ladder and put it up against the side of the car? A. Yes. — Q. Supposing that you found the side of the car had been painted up high or low down, what did you do then? A. Well, if I could get on a staging, I would paint it. — Q. Where did you get your staging? A. A good many times the staging was already up. — Q. Supposing it wasn't up? A. Well, then I would put a couple of horses and put planks on top of it and paint from that staging. Sometimes I would go along and just set the horses along, stand on top of that horse. — Q. If you were going to paint the side of a car, would the two horses be enough? A. Well, it would save putting up a continuous staging because it was easier to move those two horses along, just draw them along than it would be — it was very hard a great many times to get a staging to the whole side of the car. — Q. Then if you were going to paint the side of the car, you would take two horses and put a plank across and paint, and then take your staging down and move it along? A. I wouldn't take the staging down, I would pull it right along. — Q. Pull it right along? A. Yes, pull one a certain distance and then go and pull the other, and do that quicker than I could take the staging down. — Q. After you did one side you keep pulling the staging? A. You wouldn't need to on the ends because the plank was long enough to reach from end to end, that is, from corner to corner of the car. — Q. Now, supposing you went to a car and you found you wanted to touch up one side of it and there was a staging on the other side of the car but none on the side where you were, would you move that staging around if it wasn't being used? A. I would have to. — Q. Now, if you wanted to make a staging for a car and there were some blocks, horses and planks lying around there, you would take those horses and planks? A. I didn't very often do that because I never had to, the staging was always prepared; that is, I don't know as I ever did that. — Q. If you wanted just a horse and a plank that weren't by your car and somewhere else, you would go and get them? A. I wasn't hired to put up stagings. — Q. Never mind, but you would go and get planks and put them up? A. I had to; yes, sir. . . . — Q. You weren't ordered not to change a staging if you wanted to? I don't understand. — Q. There was no order to prevent you from taking

that staging from one side of the car to the other? A. Not unless it was in use. — Q. Unless it was in use? A. Yes."

The plaintiff was not told to use this staging. He was only directed to paint this car when it should be ready for him. He was left to make such provision as to staging as he chose. If he found a part or the whole of the materials used as a staging by the carpenters in a position convenient for his use, he was at liberty to use it, just as any other workman in the shop, after the carpenters had left it, was at liberty to take any part of it for use elsewhere. This was the substance of the testimony of numerous witnesses, and there was no evidence to the contrary.

The jury should have been instructed that this material, easily movable and not fastened together, standing there in the form of a staging erected by the carpenters for their own use and left after the carpenters had done with it, to be put in such form and used in such places, there or elsewhere, as might best serve the convenience of the defendant's other workmen, was not a part of the ways, works or machinery of the defendant, within the meaning of that language in the employers' liability act, and the defendant was not legally responsible to the plaintiff for the condition in which he found it. *McGinty* v. *Athol Reservoir Co.* 155 Mass. 183, 187. *Burns* v. *Washburn,* 160 Mass. 457. *Adasken* v. *Gilbert,* 165 Mass. 443. *Reynolds* v. *Barnard,* 168 Mass. 226. *McKay* v. *Hand,* 168 Mass. 270. *Brady* v. *Norcross,* 172 Mass. 331.

There was no evidence in the case upon which the plaintiff was entitled to recover, and the jury should have been so instructed.

In the view that we have taken of the case, it is unnecessary to consider the testimony admitted against the defendant's objection.

Under the St. 1909, c. 236, the entry must be

*Judgment for the defendant.*