THOMAS JOHNSON *vs.* BOSTON TOW-BOAT COMPANY.

Suffolk. January 13, 1882; January 4. — June 21, 1883.

If a servant is injured by the breaking of a rope used in hoisting goods, in conse-
quence of the neglect of a fellow servant, who knew of the defective condition
of the rope, to supply a new one, in accordance with a duty which the master
has imposed upon him, the question whether the fellow servant acted as a fellow
servant merely, or as the representative of the master, is a question of law and
not of fact.

A corporation owning a lighter is bound to use reasonable care in maintaining in
suitable condition the appliances used on board the lighter by its servants in
hoisting and lowering merchandise; but if it furnishes such appliances, and
employs a competent servant to see that they are kept in proper condition, it is
not liable for an injury occasioned to one servant by the parting of a rope, in
consequence of its being used for too long a time, and after its defective con-
dition was known to the servant whose duty it was to replace it.

W. ALLEN, J. The defendant is a corporation engaged in
the business of moving cargoes and merchandise by means of
lighters furnished with hoisting apparatus. The lighter on
which the plaintiff was employed was equipped with a steam
engine and derrick for hoisting merchandise, and, at the time
the plaintiff was injured, was taking on a load of iron rails.
There were six men employed upon it, — Moore, the captain,
Burns, who had charge of the engine, and four laborers, of whom
the plaintiff was one. The plaintiff was injured by the falling
of a rail upon him in consequence of the giving way of a rope
called a fall, part of the hoisting apparatus. The only negligence
charged was in respect of the rope. The plaintiff contended
that the defendant was negligent in not providing and maintain-
ing a sufficient rope; and there was evidence tending to show
that the rope gave way in consequence of the negligence of
Moore, and also that it was in consequence of the negligence
of Burns.

The jury were properly instructed that, if the defendant knew,
or, in the exercise of reasonable care, would have known, of the
defect in the rope, and did not remedy the same, or take proper
means to guard the plaintiff against it, it was negligent. These
instructions were not objected to.

The jury were also instructed that the defendant, without any
negligence of its own, might be liable for the negligence of

Moore or of Burns, under the rule of *respondeat superior*, and it is to this part of the instructions, and to refusals to instruct in reference to this, that exceptions are taken.

The ground upon which this liability is put in the charge to the jury, and obviously the only ground upon which it could be put, is that Moore and Burns might not, in respect of their negligent acts, have been fellow servants with the plaintiff. The alleged negligence of Burns was in not repairing the rope, as he was ordered to do by Moore. Such negligence would plainly be that of a fellow servant, and the question has been argued, and will be further considered, with respect to Moore alone. The question is not whether Moore was in some respects a fellow servant with the plaintiff: unquestionably he was. The instructions assume that he was, and present the question whether, in the particular act in which he was negligent, he was acting as such servant, or as the representative of the defendant. The question put to the jury was, "When the captain got a new rope in place of a defective one, did he do it as the agent of the defendant in doing its duty of providing a suitable apparatus or machine for its servants to work with, or did he do it simply as a fellow servant?" The instructions were erroneous in leaving this question to the jury. Moore was employed by the defendant to do certain things upon the lighter. Whether in doing them he was a servant engaged with others upon the lighter in a common employment, or was a deputy master or vice-principal, was a question of law, and not of fact. What he was employed to do was a question of fact; the capacity in which he did it was an inference of law. Had there been any question as to the facts, they should have been left to the jury, with instructions as to the legal inferences to be drawn from the facts which should be found. As the facts were not disputed, the question left to the jury was one of pure law. If the jury had found the law correctly, this error might have been cured; but it cannot appear that the verdict may not have been found upon an incorrect answer to this question. We think the court should have ruled, in accordance with the prayer of the defendant, that Moore and the plaintiff were fellow servants.

The evidence bearing upon the point in question was not controverted, and the material part of it was, in substance, this:

The defendant employed in its business twenty-four boats and one elevator, and had a general manager, who had the general control of its business and the charge of all its employees, boats and apparatus, and who had under him a superintendent of repairs, who visited and inspected all the lighters and apparatus used in the business. Moore was called the captain of the lighter on which the plaintiff was employed, and his duties were, as he testified, to put the men to work, to see that they did work, to keep their time, and to see to everything generally; if a new fall was needed, he was to give notice to the general manager and get an order for a new one, or to get a new one himself, if it was necessary and he did not find the manager. There was a spare fall on board at the time. The manager's instructions to Moore were to replace the falls with new ones whenever there was any defect. It did not appear how often it was necessary to renew the falls, except by inference from the fact stated, that from April 30th to June 8th was not an improper time for one to remain in use. The alleged negligence of Moore was in allowing a rope to remain in use after he knew that it was unsafe. Moore's duty was that of special superintendence. He was a foreman to superintend the labor of the men and the use and condition of the apparatus upon his boat. It is not disputed that, in superintending the labor of the men and the use of the apparatus and appliances, he was a fellow servant with the plaintiff, but it is contended that, in his supervision of the condition of the appliances, he was acting, not as a servant, but as a deputy master.

The defendant was under obligation to its servants to use reasonable diligence to maintain in suitable condition the appliances furnished for their use. If the defendant exercised that diligence, and provided suitable means for keeping its apparatus in proper condition, and employed competent servants to see that the means were properly used, it had fulfilled its duty. It was incidental to the use of the apparatus — a part of its contemplated use — that the rope should be occasionally renewed; and when the defendant had furnished the means for that renewal, and employed Moore to make the renewal whenever needed, it employed him as a servant, and not as agent or deputy. When a master has furnished suitable structures, means, and appliances

for the prosecution of a business, all persons employed by him in carrying on the business by the use of the means furnished, including those who use the means directly in the prosecution of the business, those who maintain them in a condition to be used, and those who adapt them to use by new appliances and adaptations incidental to their use, are fellow servants in the general employment and business. One employed in the care, supervision and keeping in ordinary repair of the means and appliances used in a business, is engaged in the common service. Thus, a person charged with the duty of keeping the track of a railway in repair; *Waller* v. *South Eastern Railway*, 2 H. & C. 102; the chief engineer on a steam-vessel, whose duty it was to see that the machinery was kept in order; *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429; an "underlooker" in a mine, whose duty it was to examine the roof of the mine and prop it when dangerous; *Hall* v. *Johnson*, 3 H. & C. 589; the general foreman and manager of extensive builders and contractors; *Gallagher* v. *Piper*, 16 C. B. (N. S.) 669; the superintendent having the general charge and management of a large manufacturing establishment, and having the management of lighting the mill and manufacturing gas for that purpose; *Albro* v. *Agawam Canal*, 6 Cush. 75; — were all held to be servants. In all the above cases, the persons employed to have the charge and superintendence of structures, machines or appliances were held to be fellow servants with those employed in using them.

In *King* v. *Boston & Worcester Railroad*, 9 Cush. 112, and 129 Mass. 277, *n.*, the plaintiff, a fireman on a locomotive engine, was injured by reason of a defective switch-rod, and the defendant, not being negligent, was held not liable. Mr. Justice Fletcher said : " If a corporation itself should be held responsible to its servants, that the road, when first used, was safe and sufficient, yet keeping the road in proper repair afterwards would seem to be the work of servants and laborers, as much as any other part of the business of the corporation."

In *Gilshannon* v. *Stony Brook Railroad*, 10 Cush. 228, the persons in charge of a train upon a railroad were held to be fellow servants with a laborer employed in repairing the road-bed.

In *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466, a person whose duty it was to examine the cars, engines, axles and running

apparatus of a railroad, and to keep them in proper repair, was held to be a fellow servant with a carpenter employed in repairing fences and doing other work along the line of the road.

In *Killea* v. *Faxon*, 125 Mass. 485, a carpenter employed by the defendant to erect a staging for the purpose of putting on the gutters to a building, and who furnished the materials for it and superintended its erection, was held to be a fellow servant with the coppersmith whom the defendant employed to put on the gutters. See also *Colton* v. *Richards*, 123 Mass. 484 ; *Kelley* v. *Norcross*, 121 Mass. 508.

The ground upon which the master has been held liable to his servants, for defects in means and appliances arising during their use, has been that there was evidence of negligence in him. In *Gilman* v. *Eastern Railroad*, 10 Allen, 233, and 13 Allen, 433, the liability of the master to the servant was fully considered. Mr. Justice Gray said: "The master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable to any of their fellow servants for his negligence in this respect. This care he can and must exercise, both in procuring and in keeping or maintaining such servants, structures and engines. If he knows, or in the exercise of due care might have known, that his servants are incompetent, or his structures or engines insufficient, either at the time of procuring them, or at any subsequent time, he fails in his duty." 13 Allen, 440. And it is upon this precise ground that the master has been held liable in all the cases to which we have been referred as establishing a different rule. In *Roberts* v. *Smith*, 2 H. & N. 213, the negligent act was that of the master himself. *Arkerson* v. *Dennison*, 117 Mass. 407, was put upon the same ground. So also *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282.

The case of *Ford* v. *Fitchburg Railroad*, 110 Mass. 240, is to the same effect. In that case the plaintiff, an engineer upon a locomotive engine, was injured by the explosion of the boiler of the engine. It was contended by the plaintiff that the boiler had been for a long time plainly defective, and there was evidence tending to show that the defect was known, or could have been known, by proper examination, to the master mechanic of the road, and to the superintendent of the round-house, who had charge of

the engines. The defendant asked instructions, that, if the accident could have been prevented by proper examination by them, the defendant was not liable, and that the master mechanic was a fellow servant with the plaintiff, and the defendant was not liable for his negligence. The court declined to give these instructions, and instructed the jury to the effect that, if the defendant, acting by its proper officers and servants, failed to exercise ordinary care in procuring and keeping in repair a suitable engine, it was negligent. The defendant's exceptions were overruled, and, in the opinion, Mr. Justice Colt said that the jury "must have found, in arriving at their verdict, that the defendant corporation, by its agents, intrusted with that duty, did not exercise ordinary care and diligence, in supplying and maintaining an engine, safe to be used for motive power upon their road, in the performance of that part of the plaintiff's work in which he was engaged at the time;"—that the question was "whether the corporation in any part of its organization, by any of its agents, or for want of agents, failed to exercise due care to prevent injury to the plaintiff from defects in the instrument furnished for his use;"—that the instructions asked by the defendant "assume that the plaintiff's injury was caused by the incompetency of fellow-servants. But the action is for failing in the exercise of ordinary care to provide a suitable engine for his use in the work required. This involves an inquiry into the existence and character of the defect, the sufficiency of the means employed for its discovery and removal, the duties required of those charged with the work of providing and keeping in safe working order the motive power of the road, and the fidelity with which these duties were discharged. This all concerns the obligations imposed upon the master, and the jury may have found for the plaintiff without regard to the competency or incompetency, the care or the negligence, of the officers named. The instructions given were all that were required." See remarks of Chief Justice Gray, in *Holden* v. *Fitchburg Railroad*, 129 Mass. 268, 273, and of Mr. Justice Endicott, in *Harkins* v. *Standard Sugar Refinery*, 122 Mass. 400, 405.

*Cayzer* v. *Taylor*, 10 Gray, 274, decided that, when there was negligence in the master, it was no defence that a distinct act of negligence in a fellow servant contributed to the injury.

*Ford* v. *Fitchburg Railroad*, following *Snow* v. *Housatonic Railroad*, 8 Allen, 441, decided that, where the evidence showed negligence in the master, it was no defence if the same evidence also showed negligence in a fellow servant.

The master is liable in all cases for his own negligence, and that may be shown by a defect of such a nature, or so long continued, as to be of itself evidence of negligence in the master, or the negligence of a servant may be of such a character that negligence of the master will be inferred from it.

The instructions in the case at bar allowed the jury to find for the plaintiff without any evidence of negligence of the defendant, and solely on the ground that it was liable for the negligence of Moore. The question under consideration assumes that sufficient tackle was provided by the defendant, and sufficient provision made for renewing it. Having provided sufficient appliances, a part of which required occasional renewal from the wear and tear of the use for which it was intended, and provided sufficient means for such renewal, and employed Moore to have the superintendence of the workmen and the apparatus and appliances, the use of the means provided for keeping the tackle in suitable condition was as truly a part of Moore's duty as servant as was the use of the apparatus for the direct purposes of the business, and, in performing that duty, he was a fellow servant with the plaintiff.

A majority of the court are of the opinion that the entry must be *Exceptions sustained.*

The case was argued at the bar in January, 1882, and was afterwards submitted on briefs to all the judges.

*L. S. Dabney*, for the defendant.

*I. R. Clark*, for the plaintiff.