JOHN MCGINTY *vs.* ATHOL RESERVOIR COMPANY.

Worcester.    September 30, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Corporation — Master and Servant — Negligence — Fellow Servant.*

By the St. of 1854, c. 41, certain persons and "their associates and successors" were, subject to the Rev. Sts. cc. 38 and 44, "made a corporation by the name of the Athol Reservoir Company," for the purpose of constructing and maintaining a reservoir for the supply of mills on a stream below, with special provisions relating to capital and the issue of shares. Eight mill-owners on the stream, including one only of the persons named in the statute, duly met and accepted the statute, adopted by-laws, chose officers, and transacted other business. Money in the nature of capital or joint stock was paid in and expended in the construction of dams. No shares were issued, but the members agreed that their rights in such stock should pass with their mills, mill dams, and mill privileges. Thenceforth the company met annually and elected officers, held special meetings, took deeds in the corporate name, and transacted other incidental business. *Held*, that a corporation formed under the name set out in the statute, with the membership so constituted, was valid, and that the corporation was not dissolved by the death of the original members.

In an action at common law against a corporation for personal injuries occasioned to an employee by the fall of a derrick used by the defendant in building a dam, it appeared that the derrick was changed from place to place as the work required, and the accident was due to the pulling up of the post to which one of the guy ropes had been fastened, and which was secured by a timber put crosswise in the ground in front of it; that the post was set by another employee under the direction of the defendant's superintendent; and that there was no defect or insufficiency in the derrick, or in the rope or post or cross timber. *Held*, that the superintendent as regards the setting of the post and timber acted as a fellow servant of the plaintiff; and that the defendant was not liable for his negligence.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ by the fall of a derrick used by it in constructing a dam.    Trial in the Superior Court, before *Staples,* J., who submitted to the jury the question whether the defendant was a corporation, and whether the plaintiff's injuries were due to the negligence of a fellow servant; and the defendant, after a verdict for the plaintiff, alleged exceptions, which, so far as material to the points decided, appear in the opinion.

*W. S. B. Hopkins & S. P. Smith,* for the defendant.
*H. C. Hartwell,* for the plaintiff.

MORTON, J. It appears that the plaintiff brought his action originally against certain individuals, who pleaded in abatement that, if they were connected in any way with the acts mentioned in the plaintiff's declaration, it was by reason of their being members of the Athol Reservoir Company, a corporation which employed the plaintiff, and built the dam where he was injured, and that it, and not they, should be held to answer to him. The plaintiff thereupon amended his writ by striking out their names and substituting the name of the Athol Reservoir Company, describing it as a corporation. The Reservoir Company now contends, as one of the two grounds on which it relies, that it is not a corporation, notwithstanding some of its members, who might fairly be presumed to know, have pleaded that it is.

1. By § 1 of chapter 41 of the St. of 1854, " Lyman W. Hapgood, Theodore Jones, Abraham Oaks, their associates and successors," were " made a corporation by the name of the Athol Reservoir Company, for the purpose of constructing, supporting, and occupying a reservoir of water, by the means of dams in the towns of Athol and Phillipston, in the county of Worcester, for the supply of mills situated on the stream below said reservoir, with all the powers and privileges, and subject to all the duties, restrictions, and liabilities, set forth in the thirty-eighth and forty-fourth chapters of Revised Statutes." By § 2 of said act, it was provided that " the whole amount of the capital stock of said company shall not exceed ten thousand dollars," and by § 3, that " no shares in the capital stock of said corporation shall be issued for a less sum or amount, to be actually paid in on each, than the par value of the shares which shall first be issued."

At least one of the persons named in the act of incorporation, without objection, so far as appears, from the others, with seven persons not named in the act, duly met on June 21, 1854, and accepted the act of incorporation, adopted by-laws, chose officers, and transacted other business. It is clear that the persons who took part in these proceedings became a corporation under the name of the Athol Reservoir Company. *Chester Glass Co.* v. *Dewey,* 16 Mass. 94. *Walworth* v. *Brackett,* 98 Mass. 98. *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385, 393. *Minor* v. *Mechanics Bank,* 1 Pet. 46. *Frost* v. *Frostburg Coal Co.* 24 How. 278 It is true that none of the capital stock has been issued. Some

thing in the nature of capital or joint stock has been paid in, and has been expended by the company in the construction of its dams ; but neither the paying in nor the issuing of it was a condition precedent to the existence of the corporation. See cases *supra.* Nothing in the act of incorporation, nor in chapters 38 and 44 of the Revised Statutes referred to in it, required either to be done as precedent to the formation of the corporation. As soon, therefore, as the act of incorporation was accepted and an organization effected, the grant from the State took effect, and the corporation began to exist.

It is contended, however, that all the persons named in the act of incorporation, and who took part in the organization, are dead ; that, no stock having been issued, there was no provision for a succession of members ; and that therefore the corporation has been dissolved by operation of law. Undoubtedly a corporation may be dissolved by the death of all its members, or by the loss of an integral part of its organization, so that the exercise of its corporate functions cannot be restored. *Penobscot Boom Co.* v. *Lamson*, 16 Maine, 224, 231. But it appears that the company has met annually since its organization and elected officers, and has from time to time, as occasion required, held special meetings ; that it built and has maintained the dam, which it was chartered especially to build, and has built two others, and had voted to build and was constructing the dam on which the plaintiff was injured ; that it has taken in the corporate name a deed of the land on which the dam authorized by the act was built, and also deeds of certain rights of flowage ; and that it has transacted other business that was incident to and grew out of the purpose for which it was chartered.

There can be no reasonable doubt that the persons interested have believed that they were acting and have intended to act as a corporation, and they should be held to be one unless there are insuperable difficulties in the way. We do not think there are. The corporation was established for the purpose of constructing and supporting a reservoir to supply the mills on the stream below it. Before the act of incorporation was passed, a number of mill owners on the stream had associated themselves together by an agreement, bearing date April 26, 1853, for the purpose of constructing and maintaining a reservoir across it.

The agreement provided, among other things, "that those who may hereafter have their [the parties] respective estates in the mills, mill dams, and mill privileges, shall succeed to their rights and be subject to their duties respectively in the reservoir"; that the business of the association should be under the control of the association, and that the proprietors of each of the several mill dams who were parties to said agreement should be entitled to a voice in all the business of the association equal to the proportion of the expenses which such dam was to pay; and that dam owners who were not parties might become such at any time by paying their reasonable proportion of the expenses. By Article 6 of its by-laws, the corporation adopted "as the basis of their association the articles of agreement made and entered into by the members thereof as proprietors of mills, bearing date April 26th, 1853." Article 5 of the by-laws provided that the capital stock should consist of twenty-five hundred dollars, divided into shares of twenty-five dollars each, and that the money already advanced for the purpose of the association should go in part payment for the shares. It is clear that the corporation succeeded to and took the place of the association. The members of the latter became and were members of the former, and the evident intention was that, as the members of the corporation died or conveyed their mills, mill dams, or mill privileges, those who succeeded to their respective estates as heirs or purchasers should become members of the corporation in their stead, and succeed to their respective interests in it. The uniform practice since the corporation was formed shows that this was and has been the understanding. Ordinarily, membership in a private trading corporation arises from the ownership of stock which has been issued by it, but it is not always so. *In re Philadelphia Savings Institution*, 1 Whart. 461. Shares might have been issued in the present case, or could be issued now. Instead of issuing shares, however, the members in substance agreed that their rights in the joint or capital stock of the corporation should pass with the mills, mill dams, and mill privileges, thus confining the membership to persons directly interested in the maintenance of the dams. In the absence of any restriction in the charter, we think that in the case of a corporation like this there can be no valid objection to a mem-

bership so constituted, and therefore that the objection that
the corporation has been dissolved by the death of the original
members cannot be sustained.  *Watuppa Reservoir* v. *Fall River*,
134 Mass. 267.

2. The defendant relies, in the next place, on the defence that
the injury to the plaintiff was due to the negligence of a fellow
servant.  The case was tried upon the common law counts in
the plaintiff's declaration.  The gist of these was that the de-
fendant carelessly, negligently, and improperly put up, fastened,
and secured the derrick, and carelessly and negligently caused
and suffered it to remain and be used as put up.  Although it is
nowhere distinctly stated that such was the fact, we think the
fair inference is that the derrick was a movable appliance,
which was changed from place to place as the work required.
The accident was due to the pulling up of a post to which one
of the guy ropes had been fastened.  The setting of the post
was done by one Duval, a workman, under the direction of
Park, the superintendent.  The court left it to the jury to say
whether, in setting the post, Park acted as a fellow servant of
the plaintiff, or whether he was acting for the master in the dis-
charge of the master's duty, to see that suitable machinery and
appliances were provided.  We think this was error.  Whether
Park in the setting of the post was a fellow servant with the
plaintiff, or a vice principal, was a question of law, and not one
of fact.  *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209.  There
was no defect or insufficiency in the derrick, or the guy ropes,
or the post, or the piece of timber put crossways in the ground
in front of the post and used to make the post more secure.
The derrick was changed from place to place, as occasion re-
quired.  The moving of it, and adjusting and securing it, was
one of the duties of the workmen, and connected with and a
part of the work in which they were engaged.  It was a part of
their duty to put down the post.  And if there was any negli-
gence in the manner in which or the place where it was sunk,
and the mode in which the cross timber was used, it was their
negligence, and not the negligence of the master, or of Park as
representing him.  Park, although the superintendent, was still
only a fellow servant.  As between himself and the plaintiff,
the defendant would not be liable for his negligence.  *Kelley* v.

*Norcross,* 121 Mass. 508.   *Colton* v. *Richards,* 123 Mass. 484.
*Killea* v. *Faxon,* 125 Mass. 485.   *McDermott* v. *Boston,* 133
Mass. 349.   *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209.
*Daley* v. *Boston & Albany Railroad,* 147 Mass. 101.   *McKinnon*
v. *Norcross,* 148 Mass. 533, 537.   We think, therefore, that on
this ground the entry must be,                    *Exceptions sustained.*