AROLINE E. HALL, Administratrix,

*vs.*

EMERSON-STEVENS MANUFACTURING COMPANY.

Kennebec.    Opinion December 17, 1900.

*Negligence.    Master and Servant.    Defective Machinery.*

Plaintiff's intestate was killed by the bursting of a grindstone in defendant's
    mill.    Whether it burst from inherent defects, known to the defendant, or
    which should have been known to it if reasonable care and inspection had
    been exercised, was a dominating issue in the case.

That issue the jury found for the plaintiff.    Although the evidence was con-
    flicting, the court cannot say that the jury erred in the finding.

Defendant claimed that the stone slipped in its collar, and thus caused the
    bursting, and requested an instruction that if so caused, and "that resulted
    from the adjustment of the stone by Lester Knox, the defendant is not
    responsible, as he was a fellow-servant" of plaintiff's intestate.

Another requested instruction was, that "if the defendant exercised ordinary
    care and fulfilled its duty in the selection of the stone up to the time when
    Knox began to run it, it was not the duty of the company to subsequently
    examine the stone."    Both requests were refused.

As to the first, *it is held;* that the suitable adjustment of the stone was the
    duty of the master; that if such duty was delegated to a servant, and he was
    negligent in its discharge, such negligence was that of the master, for which
    he is responsible.

As to the second request, *it is held;* that if the stone before hanging and turn-ing off presented a shelly and unsafe appearance, and such appearance indi-cated a possible or probable lack of cohesion throughout its structure, even if, when the shelly place was turned off it then appeared sound and its use seemed to be justified, still, if the original apparent defect was such as to suggest a doubt as to its interior cohesive quality to a man of ordinary pru-dence and sagacity, it was the duty of the defendant to resolve the doubt by subsequent examination.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

Action to recover for the death of the plaintiff's intestate, brought under chap. 124 of the statute of 1891.

The plea was the general issue.    The verdict, for the plaintiff in the sum of $1500.

The plaintiff alleged that her intestate Charles E. Hall, was killed by the bursting of a grindstone while at work in the scythe shop of the defendant corporation in Oakland, on the 5th day of May, 1899, and that the defendant's machinery which was furnish-ed the said Hall to work with in said shops, was defective, which defect caused his injury and death.

The case appears in the opinion.

*W. T. Haines*, for plaintiff.

*H. M. Heath and C. L. Andrews*, for defendants.

We were entitled to the rule, as a matter of law, that if the mas-ter had fulfilled his duty up to the point when the servant assumed the full control of the machine, there was no subsequent duty of examination in the absence of information as to new defects.    *Rice* v. *King Philip Mills*, 144 Mass. 229 ; *Moynihan* v. *Hills Co.*, 146 Mass. 586 ; *Johnson* v. *Towboat Co.*, 135 Mass. 209.

The master does not engage that the machinery will always re-main in the same condition.    It is the duty of the servant to observe and report when he has better means of observing defects than the master has.    *Baker* v. *Alleghany R. R. Co.*, 95 Pa. St. 211, (40 Am. Rep. 634) ; *Eicheler* v. *St. Paul Furn. Co.*, 40 Minn. 263.

The facts not being in controversy, it is a question of law whether Knox, in the adjustment of the stone, occupied, as to Hall, the posi-tion of vice-principal, or was his fellow-servant.    *Donnelly* v. *Gran-ite Co.*, 90 Maine, 117.

Assumption of risk: *Judkins* v. *Me. Cent. R. R. Co.*, 80 Maine, 418, 425; *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400, 406; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 298; Beach, Cont. Neg. 140; *Nason* v. *West*, 78 Maine, 254; *Stuart* v. *West End Street Ry. Co.*, 163 Mass. 391.

Negligence in the adjustment and management of the appliances not chargeable to the master where the placing and adjustment of the detached appliances is a part of the work to be done by the servant. *Peschel* v. *C. M. & St. P. R. Co.*, 62 Wis. 338; *Mc-Ginty* v. *Athol Reservoir Co.*, 155 Mass. 187, 188, and cases cited; *Kelley* v. *Norcross*, 121 Mass, 508; *Donnelly* v. *Granite Co.*, supra.

To keep the stone properly adjusted was the daily and constant duty of the grinder. *Bjbjian* v. *Woonsocket Rubber Co.*, 164 Mass. 214, 219.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, FOGLER, JJ.

STROUT, J. Hall, the plaintiff's intestate, was killed by the bursting of a grindstone, on which he was at work in defendant's mill. He was at the time in the service of the defendant, as a scythe-finisher, and was rightfully using the stone in doing the work for which he was employed. The stone was suspended over a spindle which run through it, but did not come in contact with it. It was held by collars of iron, fitted with a flange for holding disks of wood. One collar was stationary with the spindle, the other adjustable and movable, held in place and adjusted by a nut working on a powerful screw. It was not controverted that such was the usual and proper method for hanging the stone. The adjustment of the collars is a matter of nice and careful judgment.

Lester Knox did all of the scythe-grinding by the piece. Defendant furnished the machinery and each scythe-grinder selected his own stone from those furnished by the defendant, and with the assistance of his fellow-grinders hung it as a part of his price by the piece. This stone was hung by Knox. Plaintiff's intestate, as a scythe-finisher, had the right to use the grinding stones for grinding dies or other tools. He had nothing to do with the selection or hanging of the stones.

When it burst, it split transversely into two parts of about equal size. It was not then running at a dangerous speed. At the trial, the cause of the bursting was sharply contested. Plaintiff claimed that this stone was defective and unsuitable for the purpose, and that this was known to the officers of the defendant, or should have been known to them, if they had exercised proper care and caution; and that the bursting was the result of such defect. The defendant denied this, and assigned as the cause, that the stone slipped in the collar and dropped upon the spindle and was thus thrown out of its true and even bearing, and that this produced the result.

It was also claimed that if such slipping was in consequence of negligent hanging by Knox, or in taking proper precautions after it was hung, to correct any fault that arose from its operation, that such negligence was that of a fellow-servant for which defendant is not responsible.

Defendant made three requests for instructions, which were not given, and took two exceptions to the charge.

The first two requests need only be noticed, as the learned counsel concedes that if these were rightfully refused, all the other exceptions must be overruled. The first request was, "if the jury are satisfied that the defendant exercised ordinary care and fulfilled his duty in the selection of the stone up to the time when Knox began to run it, it was not the duty of the company to subsequently examine the stone, and for any failure on the part of Knox to report the crack testified to by Foster, the company would not be chargeable with negligence."

Although the company would not be in fault for failure of Knox to report a crack which he discovered while operating the stone, as defendant's servant, it cannot be stated as an absolute proposition of law that it was not the duty of the company to examine it, after it was put in operation. Whether such duty devolved upon it, depended upon circumstances and considerations which should be taken into account. If the stone, before hanging and turning off, presented a shelly and unsafe appearance, and such appearance indicated a possible or probable lack of cohesion throughout its struc-

ture, even if, when the shelly place was turned off, it then appeared sound and its use seemed to be justified, still, if the original apparent defect was such as to suggest a doubt as to its interior cohesive quality to a man of ordinary prudence and sagacity, it was the duty of the defendant to resolve the doubt by subsequent examination. *Cole* v. *Warren Mfg. Co.,* 63 N. J. L. 626.

The stone had been in the mill a year as a rejected stone, from its apparent condition. It was the only one there near the close of the grinding season in the spring of 1899, when one was needed to finish the work. It was hung doubtingly and experimentally, as stated by Pinkham, to test it by turning down. If when the shelly place was turned off, it appeared sound, yet whether, with knowledge of its previous condition, the care and judgment defendant was required to exercise, suggested a probability that it still lacked cohesion and might be dangerous to use and therefore called for careful subsequent examination, was a matter for the jury to determine.

The master's obligation to his servant "involves the exercise of every kind of care and diligence which is necessary to give him knowledge of the condition as to safety of his machinery and appliances, so far as such knowledge is obtainable by reasonable effort. His duty relates to the condition of these articles when they came to the hands of his servants for use, and the performance of that duty must carry him just so far into details as it is reasonably necessary to go, in view of the nature and risks of the business, to enable him reasonably to protect his servants from a danger which he should prevent." *Moynihan* v. *Hills Co.,* 146 Mass. 592.

The difficulty with the request is that it crystallized both law and fact into an absolute rule of law, and therefore was rightly refused.

The second request was, "if the injury was caused by the slipping of the stone on the collars, and that resulted from the adjustment of the stone by Lester Knox, the defendant is not responsible for such act of Lester Knox, as he was a fellow-servant of Mr. Hall."

The duty of the master to his servant is well stated in *Johnson*

v. *Boston Tow Boat Co.*, 135 Mass. 213, where it is said: "The master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable to any of their fellow-servants for his negligence in this respect. This care he can and must exercise, both in procuring and in keeping or maintaining such servants, structures or engines.

"If he knows, or in the exercise of due care might have known, that his servants are incompetent, or his structures or engines insufficient, either at the time of procuring them, or at any subsequent time, he fails in his duty." The same doctrine has been uniformly held by this court. *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 116; *Donnelly* v. *Granite Co.*, 90 Maine, 110. If the master delegates this duty to a servant, and he is negligent in its performance, such negligence is that of the master, for which he is responsible. *Elmer* v. *Locke*, 135 Mass. 577; *Hough* v. *Railway Co.*, 100 U. S. 218.

Great care and good judgment were required in the selection of the stone and in its hanging. It was a part of the machinery and appliances for defendant's business, which were within the duty of the master. In discharging that duty, Lester Knox, though for most purposes a fellow-servant of Hall, stood in the place of the master. If in the adjustment of the stone by him, he failed to exercise due care, and in consequence the stone slipped and Hall was thereby injured, the defendant was responsible, if Hall himself was free from fault.

If structures and appliances furnished and set up by the master are sufficient and reasonably safe, the operation of the machine is within the duty of the servant; and the care, supervision and incidental changes, such as oiling, changing rolls or gears, which are needed in the orderly running of the machines, are regarded as the business of the servant, as to which his negligence is not imputed to the master. *Johnson* v. *Boston Tow Boat Co.*, supra. This request was rightly refused.

Upon the issue of fact the testimony was voluminous and contradictory. The jury found for the plaintiff, and we are asked to set the verdict aside as against the evidence.

It appears that this stone came to the mill with others in April, 1898. When it arrived, Pinkham, defendant's treasurer and general manager, was sick and absent from the works. During his absence, Andrews, defendant's bookkeeper, was manager. Lester Knox, the grinder, called the attention of Andrews to it. Andrews says he saw a "shelly place on it"; he "didn't know whether best to hang it or not"; he "didn't want to take any responsibility." He told Knox he "guessed we wouldn't take any chances on it. We would get another stone". That this stone was deducted from the bill, and another shipped by the shipper, nothing being paid for this one. He says the stone "was cracked" when it came. He does not claim to be a judge of the quality of stone.

He also says that just before they had got through grinding, in the spring of 1898, Knox wanted a stone to finish the grinding, that this was the only one left, but it was not used, and another was sent for.

The accident happened May 5, 1899. About ten days prior to that this stone had been hung, and during that time had been in use. Defendant's witnesses say there was a shelly place on its side, and that, by direction of Pinkham, it was hung tentatively, to turn off the shelly place, with the view of ascertaining whether it was sound below that; that the shelly place was ground off, and that the stone then appeared sound. Some of the witnesses say that after this, a small seam appeared on the face of the stone, which was ground off on using. Plaintiff's witnesses say a crack was developed, which spouted water, which they regarded as a danger signal. This was denied by witnesses for the defense.

There was much conflicting testimony as to the appearance and condition of the stone after it burst. Some witnesses say they discovered a crack—and iron rust, indicative of a previous crack. Other witnesses deny any such appearance. The stone itself was brought to court and examined by the jury. The question of the quality and condition of the stone, whether defective or not, and if defective in fact, whether it was known to the officers of the company, or should have been known if they had used reasonable diligence to ascertain, and whether such defect caused the stone to

burst was submitted to the jury under clear and careful instructions. Upon this issue the jury have found in favor of the plaintiff.

Without reviewing the evidence, it is sufficient to say that there was testimony which, if believed, would justify the finding. It is true there was strong conflicting testimony. It was the province of the jury to determine what the fact was. Other minds might have reached an opposite conclusion. We cannot say that the verdict is clearly against the evidence, nor do we see any ground for disturbing it for bias or misapprehension.

*Exceptions and motion overruled.*