CHARLES B. ROUNDS, Administrator, *vs.* JOHN B. CARTER.

Washington.    Opinion January 24, 1901.

*Negligence.    Fellow-Servant.*

In operating machinery, or in the ordinary use of appliances furnished, a servant assumes the risk of injury from the negligence of his fellow-servant, if the servant employed is competent for the service required of him.

Supplying safe machinery and appliances is one thing; the operation in the business for which they are used, is another.

A platform car used by a contractor to convey sleepers had four stakes standing at the forward end of the car in the usual places, one of which was too long to clear a bridge under which the train passed. Either the jar of the car by the striking of the stake against the bridge, or the rebound when it cleared it, caused the plaintiff to fall to the track, where he was killed.

The stake was not a permanent fixture to the car and had been placed there by a fellow-servant. It was an instrumentality only, used when needed, then discarded.

*Held;* that loading the cars, and the necessary binding or otherwise securing the articles transported, when they were of such character as to require it, including the selection of stakes from a large and suitable quantity fur-

nished, pertained to the ordinary use of the car, within the scope of the servant's employment, and to which the duty of the master did not extend.

ON MOTION BY DEFENDANT.

This was an action brought by the administrator of one Daniel T. Dooley, who was killed at Calais, May 27th, 1898, by falling from a car belonging to a construction train used by the defendant in certain parts of the works of building the Washington County railroad. The jury returned a verdict for the plaintiff of $3,000.

The case appears in the opinion.

*R. J. McGarrigle, Geo. M. Hanson and Chas. B. Rounds, for* plaintiff.

Duty of employer to employee: *Shanny* v. *Androscoggin Mills*, 66 Maine, 420; *Guthrie* v. *Maine Central R. R. Co.*, 81 Maine, 572; *Cayzer* v. *Taylor*, 10 Gray, 274; *Snow* v. *Housatonic R. R.* 8 Allen, 441; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *Neveu* v. *Sears*, 155 Mass. 303.

Acts of fellow-servants: *Stevens* v. *E. &. N. A. Ry.* 66 Maine, 74; *Shanny* v. *Androscoggin Mills*, 66 Maine, 420; *Mayhew* v. *Sullivan Mining Co.*, 76 Maine, 100; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass., 240; *Cayzer* v. *Taylor*, 10 Gray, 274; *Holden* v. *Fitchburg R. R. Co.*, 129 Mass. 268, 276; *Moynihan* v. *Hills Co.*, 146 Mass. 586; *McIntyre* v. *Boston & Maine Railroad*, 163 Mass. 189; *Laning* v. *N. Y. Cent. R. R. Co.*, 49 N. Y. 521, 532; Buswell on Personal Injuries, (2nd Ed.) § 193.

Risks from improper appliances: *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 113; *Shanny* v. *Androscoggin Mills*, 66 Maine, 420; *Mayhew* v. *Sullivan Mining Co.*, 76 Maine, 100; *Hull* v. *Hall*, 78 Maine, 114; *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400; *Rhoades* v. *Varney*, 91 Maine, 222; Buswell on Personal Injuries, (2nd Ed.) §§ 208, 217, 218.

*W. R. Pattangall*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

STROUT, J. Defendant was a contractor in building the Washington County railroad. In the performance of his contract, he

hired a locomotive, engineer and fireman, and some platform cars, paying the owners a rental which included the wages of these men. He employed the engine and cars in transporting his laborers to and from their work, and in carrying railroad ties, tools and other articles used upon the work. Some of the men operated the train, and attended to the loading and unloading of the commodities transported, while others worked upon the road in its construction; but all were engaged in the common business of the defendant, in the construction of the railroad, and all were fellow-servants. Toward them Carter occupied the relation of a master. As such master it was his duty to furnish reasonably safe machines, appliances and instrumentalities for the work in which his servants were engaged. For any negligence in this respect, which should cause an injury to a servant, he would be responsible. But in operating the machines, or in the ordinary use of the appliances furnished, the servant assumed the risk of injury from negligence of his fellow-servant, if the servant employed was competent for the service required of him.

Dooley, plaintiff's intestate, was in the employ of Carter, as a laborer on the railroad, and traveled to and from his place of labor on the platform cars. When ties were transported, they were confined on the car by stakes inserted in sockets at each end. On the evening of May 27, 1898, while returning from his work on a platform car, with seven or eight other laborers thereon, he was thrown from it and received injuries which resulted in his death shortly after. At the time of the accident four stakes were standing on the forward end of the car in the usual places, one of which was too long to clear a bridge under which the train passed, and struck the sleepers of the bridge, jarring the car. It does not appear who selected the stakes from a large quantity at the tie yard, nor who put them in the sockets upon the car. Presumably it was done by some of defendant's servants engaged in transporting ties, on that day. They were not there when the train took the laborers out in the morning. Dooley was standing near the long stake, but it is not clear whether his hand was upon it or not. Either the jar of the car by the striking of the stake against the

bridge, or the rebound when it cleared it, probably caused Dooley to fall to the track, where he was run over by the wheels of that and the following car. The vital question is whether Carter is responsible for the accident, by reason of a failure to perform his duty.

No complaint is made that the engine and cars were not suitable and sufficient, nor that the employees were not competent for the discharge of their duties. But it is claimed, that the error in having a stake of too great length was the fault of the master. We cannot concur in this view. The stake was not a permanent fixture to the car. It constituted no part of the car, as a car. It was only an instrumentality, used when needed, and then discarded. It was of sufficient quality and strength for the use. It was not necessary when laborers were transported and was not designed for use by them when in transit. Loading the cars, and the necessary binding or otherwise securing the articles transported, when they were of such character as to require it, including the selection of stakes from a large and suitable quantity furnished, pertained to the ordinary use of the car, within the scope of the servant's employment, and to which the duty of the master did not extend. It was incidental to and a part of the work in which they were engaged. The master's duty was performed when he had supplied suitable materials for the servant's use, and competent men for their several duties. Supplying safe machinery and appliances is one thing— their operation in the business, another.

*Cassidy* v. *Maine Central Railroad Co.,* 76 Maine, 488, bears a striking analogy to this case. There a person in charge of a construction train, ordered a servant to jump upon a car, while in motion. In doing so he caught upon a stake in a platform car, which was not properly secured by the dog or pawl which served to keep the stake in a firm and upright position, and thereby fell under the wheels and was injured. It was held that the conductor who gave the order, and the employee who put the pawl in place, were fellow-servants with the person injured, and that the negligence was that of the servant and not of the railroad company.

In the leading case of *Farwell* v. *Boston & Worcester Railroad*

*Corp.* 4 Met. 49, Chief Justice Shaw, in delivering the opinion of the court, said:—"The general rule, resulting from considerations as well of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services. . . . . And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master."

In *Johnson* v. *Boston Tow-Boat Co.*, 135 Mass. 209, where a servant was injured by the breaking of a rope used in hoisting goods, in consequence of the neglect of a fellow-servant, who knew it to be defective, to supply a new one, in accordance with a duty which the master had imposed upon him, the court said: "It was incidental to the use of the apparatus—a part of its contemplated use—that the rope should be occasionally renewed; and when the defendant had furnished the means for that renewal, and employed Moore to make the renewal whenever needed, it employed him as a servant, and not as agent or deputy." The master was held not liable. So where the chief engineer on a steam vessel, whose duty it was to see that the machinery was kept in order; an underlooker in a mine, whose duty it was to examine the roof of the mine and prop it when dangerous; the general foreman and manager of extensive builders and contractors; the superintendent having the general charge and management of a large manufacturing establishment, and having the management of lighting the mill and manufacturing gas for that purpose;—in all these instances the doctrine as to fellow-servants was held to apply, and the negligence of such servant was not imputed to the master. *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429; *Hall* v. *Johnson*, 3 H. & C. 589; *Gallagher* v. *Piper*, 16 C. B. (N. S.) 669; *Albro* v. *Agawam Canal Co.*, 6 Cush. 75. So the conductor of a freight train is held to be a fellow-servant with a brakeman on the same train for whose negligence, causing injury to another servant, the

master is not liable. *N. E. Railroad* v. *Conroy,* 175 U. S. 323. So where in moving a building, the arrangement of blocks and pulleys was made by fellow-servants, who took them from a number at their disposal, and the hook upon one proved defective and caused an injury to a servant, the master was held not liable—the use of the block and hook as they were used being a temporary incident of a particular job. *Harnois* v. *Cutting,* 174 Mass. 398. So where a derrick, in itself sufficient, was moved from place to place as occasion required in the business, it was held that the moving and adjusting it in place was one of the duties of the workmen, and connected with and a part of the work in which they were engaged, and if there was negligence in its adjustment when moved, it was their negligence, and not that of the master. *McGinty* v. *Athol Reservoir Co.,* 155 Mass. 187. See also *Elmer* v. *Locke,* 135 Mass. 577; *Beaulieu* v. *Portland Co.,* 48 Maine, 291; *Killea* v. *Faxon,* 125 Mass. 485; *Brady* v. *Norcross,* 172 Mass. 333; *Holden* v. *Fitchburg R. R. Co.,* 129 Mass. 272.

So where a railroad corporation furnishes for the use of its servants a sufficient supply of suitable links for connecting its cars, it is not bound to prevent the use of dangerous and unsuitable links by its servants. *Miller* v. *N. Y., N. H. & H. R. R. Co.,* 175 Mass. 363.

Applying these principles to the facts of this case, it is apparent that the selection of stakes, and placing them in position on the platform car to hold the ties in place, were among the duties of the servants, connected with, incidental to and a part of the work in which they were engaged; and that their negligence in the performance of such duties was not the negligence of the master, and he is not responsible for an injury resulting therefrom to another servant, engaged in the same general employment of building the railroad.

Upon the evidence Carter is not shown to be in fault, and the verdict against him is contrary to the law of the case.

<div align="right">

*Motion sustained.   Verdict set aside.*

*New trial granted.*